### HUBBARD v. FURMAN UNIVERSITY.

ALLEGATIONS IN CASES OF LIBEL.—If the words alleged as libellous are
    plainly so, or if they are wanting in any defamatory significance,
    it is the province and duty of the Court to say so. Words used
    therein are to be given their ordinary and popular meaning. When
    the meaning is doubtful, the question should be sent to the jury.
    Circular alleged here to be defamatory held not to be so *per se*,
    and there being no allegations that on account of certain peculiar
    circumstances it was understood by those to whom it was sent as
    charging plaintiff with incompetency or moral delinquency or negli-
    gence, demurrer sustained.

Before WATTS, J., Greenville, November, 1906.   Af-
firmed.

Action by Louis M. Hubbard against Furman Univer-
sity.   From order sustaining demurrer, plaintiff appeals.

*Mr. D. Lewis Dorroh,* for appellant, cites: *Complaint
states a cause of action:* 63 S. C., 625; 1 N. & McC., 290; 4
McC., 491; 18 Ency., 994, 1054; 8 L. R. A., 193, 524; 6
Rich., 431; 9 Rich., 313.   *The language alleged is libellous:*
22 S. C., 372; 6 Rich., 431; 5 East., 231.   *The question is
for jury:* 18 Ency., 996-7; 45 Am. R., 618; 22 S. C., 372;
2 N. & McC., 511; 2 McC., 189; 2 Rich., 573; 2 Bail., 579.

*Messrs. B. M. Shuman* and *Haynsworth & Patterson,*
contra, cite: *Libel defined:* 18 Ency., 861, 917, 916, 924,
944, 945, 1029, 974, 975, 977 990, 991; 61 S. C., 151; 63
S. C., 530; Dud., 303; 4 McC., 317; 23 Minn., 449; 9 Rich.,
382; 1 Rich., 184; 2 Rich., 395.

April 9, 1907.   The opinion of the Court was delivered
by

MR. JUSTICE WOODS.   This action was brought to re-
cover damages for certain publications of the defendant
alleged to be defamatory of the plaintiff and injurious to
his reputation and business as head of a music school.

The Circuit Court sustained a demurrer to the complaint, on the ground that it failed to state facts sufficient to constitute a cause of action, in that the publications attributed to the defendant were not defamatory or libellous. The exceptions in varying terms assign error in this conclusion.

The definition of libel as adopted in *Smith* v. *Bradstreet Company,* 63 S. C., 525, 530, 41 S. E., 763, is as follows: "A libel is malicious defamation, expressed either by writing or printing, or by signs, pictures, effigies or the like, tending to blacken the memory of one who is dead, or to impeach the honesty or integrity or reputation, or publish the natural or alleged defects of one who is alive, and thereby to expose him to public hatred, contempt, ridicule or obloquy, or to cause him to be shunned or avoided, or to injure him in his office, business or occupation."

For the purpose of relieving pleadings in libel cases from one of the rigid technical rules controlling them, the following provision was incorporated in the Code of Procedure as section 185 : "In an action for libel or slander, it shall not be necessary to state, in the complaint, any extrinsic facts, for the purpose of showing the application to the plaintiff of the defamatory matter out of which the cause of action arose; but it shall be sufficient to state generally that the same was published or spoken concerning the plaintiff ; and if such allegation be controverted, the plaintiff shall be bound to establish, on trial, that it was so published or spoken."

Before this law was enacted, when the alleged libel did not mention the name of the plaintiff it was necessary to state the extrinsic facts leading to the conclusion that the defamatory matter was applied to him. The change, however, does not obviate the necessity of setting out the facts which make language, not in itself defamatory, have that import. The rule as thus stated in 13 Ency. P. & P., 32, is universally recognized: "If the alleged defamatory words are not actionable on their face, but derive their defamatory import from extrinsic facts and circumstances, such extrinsic facts and circumstances must be set forth and connected with the

words charged by a proper averment." *Power* v. *Miller,* 2 McC., 220; *Ashbell* v. *Witt,* 2 N. & McC., 364. In *Wilson* v. *Hamilton,* 9 Rich., 382, it is said: "When the defamatory paper shows clearly what is meant, and of whom it is written, it is unnecessary to allege new matter by way of inducement in the introductory part of the declaration; but where the paper is so ambiguous in its language that, from a perusal of it, the person alluded to cannot be ascertained, or where the libellous purpose is not manifest, a colloquium and averment are necessary to explain the meaning."

Chief Justice Shaw thus states the principle in *Carter* v. *Andrews,* 16 Pick., 1, 6: "If the words have the slanderous meaning alleged, not by their own intrinsic force, but by reason of the existence of some extraneous fact, the plaintiff must undertake to prove that fact and the defendant must be at liberty to disprove it. The fact then must be averred in a traversable form, with a proper colloquium, to wit: an averment that the words in question are spoken of and concerning such usage, or report, or fact, whatever it is, which gives to words, otherwise indifferent, the particular defamatory meaning imputed to them. Then the word 'meaning' or '*innuendo*' is used with great propriety and effect in connecting the matters thus introduced by averments and *colloquia,* with the particular words laid, showing their identity, and drawing what is now the legal inference from the whole declaration." The cases of *Zimmerman* v. *McMakin,* 22 S. C., 372, and *Smith* v. *Bradstreet Company, supra,* give no intimation of any change in the law on this subject, for in both cases the matter set out was held to be defamatory on its face. Many authorities will be found in other jurisdictions to the effect that the Code of Procedure has made no change in this rule of pleading. 13 Ency. P. & P., 36. Indeed, the rule is so manifestly founded on common sense and justice that probably nothing but an explicit enactment would lead the Courts to depart from it.

In determining whether words are libellous, they are to be given their ordinary and popular meaning; and if they

are susceptible of two meanings, one libellous and the other innocent, the former is not to be adopted and the latter rejected as a matter of course, but it must be left to the jury to determine in what sense they were used. *Davis* v. *Johnson,* 2 Bailey, 579; *Marshall* v. *Gunter,* 6 Rich., 431. If the words are plainly libellous, or wanting in any defamatory signification, it is the province and duty of the Court to say so. Where the meaning is doubtful, it is the province of the jury to decide. Note, 4 Am. Dec., 351; *Barrows* v. *Bell,* 66 Am. Dec., 479; *Hayes* v. *Press Company,* 14 Am. St., 874; *St. James Military Academy* v. *Gaiser,* 46 Am. St., 502.

The sufficiency of the allegations of the complaint now under consideration is to be tested by these general rules. The plaintiff alleges that he was the efficient, successful director of music in the Greenville Female College from September the 20th, 1900, until he voluntarily resigned his position on June the 6th, 1906, and opened a music school of his own in the city of Greenville, called the South Carolina College of Music; and he is now conducting this school, teaching himself and having the oversight of other teachers associated with him.

The first alleged libel is thus set forth: "That on July the 20th, 1906, the defendants jointly printed and published and circulated generally, and among patrons and pupils of the said Greenville Female College and persons likely to become patrons or pupils of the said Greenville Female College or of the South Carolina College of Music, a circular letter containing the following false and defamatory matter: 'To patrons of the college: you are doubtless aware of the changes made in the College Conservatory of Music. These were made for the good of the department and in the interest of our patrons.'

"The defendants published the aforesaid false and defamatory matter concerning the plaintiff, and the defendants published the said matter wantonly, wilfully, maliciously and in disregard of plaintiff's right, and for the purpose of pre-

33—76

venting and deterring persons who had been pupils of the plaintiff in the Greenville Female College, and others, from becoming pupils of plaintiff in the South Carolina College of Music, and for the purpose of disgracing and degrading plaintiff in the estimation of the public, and for the purpose of injuring plaintiff in his profession."

The application of the alleged false and defamatory matter to the plaintiff, the defendant's malicious purpose to injure plaintiff in his business and reputation, are sufficiently set out; but there is no allegation that the words used were meant by the defendants to charge the plaintiff with incompetency as a teacher or with lack of moral character, and that they were so understood, by those to whom the circular letter was sent.

If the publication is not libellous *per se,* bad motive or malicious purpose to injure the plaintiff is not enough without an allegation that it effected the evil purpose by conveying to those to whom it was sent, a charge injuriously affecting the character or business of the plaintiff. With such an allegation, the jury after hearing the evidence, would determine whether any meaning, which the words would not ordinarily imply was conveyed to others to the injury of plaintiff's character or business. In the absence of an allegation as to any charge which the defendant intended to make and which those to whom the circular was sent understood to be made, the plaintiff's case depends on whether the circular letter was libellous *per se.* In *Mayrant* v. *Richardson,* 1 N. & Mc C., 347, 349; it was said: "It has been held that words written and published, are actionable, which if *spoken* would furnish no ground of action. (*Villers* v. *Monsley,* 2 Wilson, 403.) But then they must be such, as, in the common estimation of mankind, are calculated to reflect *shame* or *disgrace* upon the person they are spoken of, or hold him up as an object of *hatred, ridicule,* or *contempt.* There is nothing of that sort contained in these publications. They barely express an opinion that plaintiff's mind had been impaired by disease. That was a *misfortune* and

not a *fault*. It might have been calculated to excite *compassion,* but not *hatred, ridicule,* or *contempt."* This language was applied in *Fonville v. McNease,* Dudley, 311; and *State* v. *Farley,* 4 McC., 317, is to the same effect.

It is true, no doubt, that under the comprehensive definition of libel adopted in later cases, some matters would be regarded libellous which were injurious to the plaintiff's business, without going to the extent of holding him up to hatred, ridicule or contempt. *Zimmerman* v. *McMakin, supra.* But it would be carrying the law of libel beyond precedent, and we think quite beyond principle, to hold libellous *per se* a college circular claiming improvement by reason of changes in the faculty. Society advances by criticism, preference, and selection. The expression of preference by a change of teachers, and public claim of improvement therefrom, is not libellous in itself. Communication to others of such preference and claim would not ordinarily be understood as implying the charge of incompetency or lack of character. Innumerable changes are daily made in professional and business relations from which improvement is claimed without being understood by any reasonable person as a reflection on the character or ability of those concerned. This language of the circular was not libellous *per se* and the allegations of the complaint with respect to it are fatally defective.

The plaintiff further charges: "That at or about the same time, the defendants jointly composed and printed and published and circulated generally among patrons and pupils of the Greenville Female College, and persons likely to become patrons or pupils of the Greenville Female College or the South Carolina College of Music, a pamphlet entitled: 'Bulletin of Greenville Female College,' containing the following matter: 'Special attention is called to the new music faculty. The director is Professor H. W. B. Barnes, who will be teacher of voice, theory, harmony, and pipe organ. Professor Barnes has added to extensive training under eminent teachers a highly successful career as a teacher,

and director of music. He is a versatile artist, and teacher, just now in the prime of his career. Professor Barnes is strongly indorsed by his pastor, of the First Baptist Church of Piqua, Ohio, and others, artists and critics. See testimonials in catalogue. It has been the hope of the President of the college for several years, as often expressed by him, to see a choral society organized among students of the college and other musical people of Greenville. This has hitherto not been feasible, owing to the lack of necessary organizers. It is now announced with great satisfaction that Professor Barnes is excellently equipped for this kind of work;' and, further, said bulletin contains the following matter: 'The president of the college· has the past few years, earnestly desired to see such a choral society in Greenville, as he has frequently expressed to friends of the institution, but he could not secure support from the College Conservatory, whence it was to be expected. Now this difficulty has been removed, and the opportunity offered.'

"That the matter herein quoted from the bulletin is false and defamatory, in that it implies that the plaintiff while director of music in the Greenville Female College was incompetent or negligent, and stood in the way of the organization of a choral society, needed or desired by said college, or its president, and failed or refused to support the president, as he should, in his efforts. to improve said college and benefit its pupils, and the defendants jointly published the same wantonly, wilfully and maliciously and in disregard of plaintiff's rights, and for the purpose of preventing and deterring persons who had been pupils of the plaintiff's in the Greenville Female College, and others, from becoming plaintiff's pupils in the South Carolina College of Music, and for the purpose of disgracing, and degrading plaintiff in the estimation of the public, and for the purpose of injuring him in his profession."

Reasonable men would understand this bulletin to mean, that the president of the college and the plaintiff were at variance as to the desire and duty to organize a    choral

society and the advantages to be derived from it. It falls far short of implying as alleged that the plaintiff was incompetent or negligent in the discharge of the recognized duties devolving on him as the head of the College Conservatory of Music.

The publications concerning the plaintiff are not libellous *per se,* and there is no allegation that on account of certain peculiar circumstances they were understood by those to whom they were sent as charging the plaintiff with incompetency or negligence or moral delinquency.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.