R. H. TROLLINGER v. F. H. FLEER.

(Filed 15 November, 1911.)

**1. Instructions, More Explicit—Special Requests—Practice.**

When the judge properly instructs the jury generally upon the law applicable to the issues, an exception that the charge was not full or explicit will not be considered on appeal, as, in such a case, error can only be assigned to the refusal of the judge to give proper and more explicit instructions in response to special prayers therefor.

**2. Contracts—Agreeing Mind—Requisites.**

While it is necessary to a valid contract that the parties assent to the same thing in the same sense, the assent may be given by the agent of a party having either express or implied authority to do so.

**3. Contracts—Principal and Agent—Confirmation—Subsequent Ratification—Authority Express or Implied.**

When one person holds another out as his agent and thereby induces others to act to their prejudice, upon the assumption that he had full authority to represent him, it is the same in law as if he had expressly authorized him to do so; or, if he ratifies what he did, it is the same, in effect, as if he had in the beginning actually and expressly conferred the requisite authority.

**4. Same—General Charge—Evidence—Questions for Jury.**

The defendant, having made by letter a definite proposition to the plaintiff to work on his farm, requested an acceptance of the proposition by telegram, with which the plaintiff complied. The plaintiff then went to the defendant's farm, and his employment was accepted in accordance with the terms of the proposition by one who was in possession, assuming full control and management for the defendant; and there was evidence of ratification by the defendant at a subsequent time when he visited

his farm: *Held*, (1) the question of plaintiff's employment under the contract did not depend solely upon whether the defendant received the telegraphic reply to his written proposition, but also upon whether it was consummated by the acts of the defendant's agent; (2) the recognition by the defendant of this agency, with full knowledge of the facts, was a ratification of the agent's prior acts, and his assent to what the agent had done was equivalent to prior authority given; (3) evidence that the defendant placed the agent in general charge of his farm, with apparent right to make contracts of employment, is competent to be considered by the jury upon the question whether an agency of the character claimed existed or not.

APPEAL from *Lyon, J.,* at March Term, 1911, of DAVIDSON.

This action was brought by the plaintiff for loss of wages for himself and his two sons for twelve months, alleging that he made a contract to work for the defendant on his farm near Thomasville for one year from 1 July, 1909, at the price of $1,200 and $1 per day for each of plaintiff's sons, said payments to be made monthly, and also for expenses of moving his furniture to the defendant's farm, and for loss incurred in giving up his position, which he claimed he filled, with some other parties.

The defendant denied that he had ever hired either the plaintiff or his sons, and alleged that the proposal to hire them was altogether tentative, and was dependent upon his interview with the plaintiff at the defendant's farm, as appears in the last clause in defendant's letter to plaintiff, dated 22 June, 1909, in which he says: "I will look for an immediate reply, after receiving which I will make it convenient to meet you at an early date." The defendant further alleges that the plaintiff had made certain representations as to his qualifications to do the work required with machinery, which he ascertained were not true, as he could not operate the machinery with which the defendant expected to farm. The defendant further denied that he had made any contract for the hire of the boys, but the court treated the hiring of the plaintiff and the two sons as an entire contract. The plaintiff and his sons were discharged by the defendant and, they allege, without just cause or excuse. The defendant contended at the trial that there was no sufficient

contract of hiring between the plaintiff and himself, and that his brother, M. L. Fleer, who actually hired the plaintiff and his boys upon the terms mentioned, had no authority from him to do so. This requires a summary of the testimony.

On 7 June, 1909, plaintiff mailed to the defendant, from Seneca, S. C., a letter, in which he proposed to hire himself as manager, and his boys as laborers, to the defendant, who owned and cultivated a farm in Davidson County, making a formal application for the positions. Defendant answered, 16 June, 1909, as follows: "I believe you would be the man for the job, and if you will tell me what pay you expect I am willing to take the matter into consideration. Figure upon straight wages by the month or year, as I do not care to share crops. Your reply should be sent to my Philadelphia office to reach me promptly. Use the inclosed envelope." To this letter plaintiff replied, proposing to hire himself, as manager, at $1,200 a year, and each of his boys at the wages of "a common day laborer." Defendant acknowledged the receipt of this letter 22 June, 1909, in a letter of that date, and then proceeded as follows: "I am very favorably impressed with the statement you make regarding your ability, and I have no doubt that if I were to engage you we could get along nicely. The only house I have in which it would be practicable for you to live, in order to have the place under supervision, is the tenant-house now occupied by a colored man. This only has four rooms, but could be enlarged by a second story, whereby it would be large enough to accommodate you. I should like to send the present tenant of this house away not later than 1 July, if you could be ready to move in by that time with only part of your family. I would then immediately start to erect an addition large enough to accommodate you all. It would require one or two of your boys to take care of the work around the barn and place, and they should come along with you at once. The wages for common farm labor around our parts is $1 per day, and your boys will have to start at that price. If you, yourself, could start in on 1 July, I should like to have an immediate answer by telegraph, in order to give the colored man now in the tenant-house a chance to look for work elsewhere, and make other necessary

arrangements." In answer to this letter, plaintiff wired defendant, 28 June, as follows: "Will start to work 1 July, with one boy. Will be here to-day."

Plaintiff testified that on 30 June, 1909, he went to the farm with one of his sons, for the purpose of making preparations to move into the house with his family and to do the work assigned to them. He found there M. L. Fleer, defendant's brother, who had entire charge and control of the farm, defendant being absent and at his home in Philadelphia, Pa. That M. L. Fleer directed the work on the farm, kept the time of the employees and paid them their wages, issued checks for F. H. Fleer. He then stated that M. L. Fleer told him "to move into the house," and also put him and his son to work. When he first met M. L. Fleer at the farm, he said to plaintiff: "This is Mr. Trollinger, is it?" To which the plaintiff replied, "Yes." He then said: "I was looking for you; had a letter from brother that you would be here to-morrow to go to work; and where are the boys?" To which witness replied that he had not agreed to bring but one, and he was with him. M. L. Fleer also told him that he had the house cleaned up ready for him to move into, but he was to have two boys. Witness told him he would furnish the other one later; that he had wired to the defendant that he would bring one, and he had him with him. Plaintiff testified further as follows: He had worked nine days and was taken sick and had to go to bed, but before he went to bed the defendant came, but he had no conversation with him except with regard to work; talked to him frequently about the work; was working just as a hand with the rest; the defendant was on the farm only two days; the second day he was there plaintiff went over to see him, and spoke to him, and the defendant said, "I am afraid I have made a mistake and hired a sick man," to which the plaintiff replied, "Yes, I am sick; I guess I will get well or die off your hands." That the defendant then excused himself, and he has never spoken to him since. He left for Philadelphia that night.

There was evidence tending to contradict the plaintiff's proof as to the authority of M. L. Fleer to make the contract, and as to what the defendant had said to the plaintiff when he was sick;

the general trend of the evidence, on the part of the defendant, being to show that no contract was made unless by the letters which passed between the parties; and there was also evidence, on the part of the plaintiff, tending to show that he and his boys had complied with the contract to the date of their discharge, and that the discharge was wrongful, and evidence on the part of the defendant to the contrary.

The judge substantially charged the jury to find whether the contract of hiring was entered into by the parties, as alleged by the plaintiff, and that if the plaintiff and his boys, after the telegram of 28 June was sent to the defendant, went to the farm and were put to work by M. L. Fleer, and he was the agent of the defendant for that purpose, the plaintiffs would be entitled to recover the contract price, less what he and his sons had since received for their services elsewhere, unless the jury should find that they were rightfully discharged, the burden to prove that fact being upon the defendant; and if the jury found that there was no contract, or if there was one and the plaintiff and his sons were rightfully discharged for a breach thereof, their verdict should be for the defendant. There was a verdict for the plaintiff and judgment thereon. Defendant appealed.

*T. J. Jerome and E. E. Raper for plaintiff.*
*A. F. Sams, F. C. Robbins, and Watson, Buxton & Watson for defendant.*

WALKER, J., after stating the case: There was ample evidence to show that a contract for the hire of plaintiff and his sons had been made by the defendant, and we think the case was fairly submitted to the jury, with proper instructions as to the law. The motion to nonsuit, and the prayer for peremptory instructions, were, therefore, properly overruled. The charge may not have been as full or as explicit as defendant may have desired it to be; but, if not so, they should have asked for special instructions, so that it might be made so. *McKinnon v. Morrison,* 104 N. C., 354; *Simmons v. Davenport,* 140 N. C., 407; *S. v. Yellowday,* 152 N. C., 793. We have no doubt that the learned judge would promptly have complied with any such request.

We need not decide the case by an answer to the question whether the letters constituted a definite offer and the filing of plaintiff's telegram an acceptance thereof, as of the date of such filing, without regard to the fact, if true, as defendant testified, that he did not receive the telegram before he left Philadelphia, or to any loss or delay in transmission, or to any other casualty which prevented a receipt of plaintiff's notice of acceptance. This subject is fully discussed in Clark on Contracts (2 Ed.), pp. 25-27; 1 Wharton on Contracts, sec. 18; 1 Parsons on Contracts (9 Ed.), star pages 475-485, all citing and commenting upon the celebrated case of *Dunlop v. Higgins*, 1 H. L. Cases, 381.

There is, of course, no contract unless the parties assent to the same thing in the same sense; but it is not necessary that the assent should be given by the party himself, as it may be given by his agent, and it was in this way that the case was submitted to the jury. The real question then is, Was there evidence in the case that M. L. Fleer was the agent of the defendant to make the contract? and this agency could be established by express authority given to him or by the conduct of the defendant in holding him out as his agent for that purpose. He was certainly willing to contract with the plaintiff upon the terms stated in the letter of 21 and 22 June. The evidence tends to show that he had left M. L. Fleer in full charge of his farm, with apparent authority to act for him in the premises, and there was also evidence that he afterwards recognized him as his agent by ratifying what he had done and with knowledge of the facts. "Where a person, by words or conduct, represents or permits it to be represented that another person is his agent, he will be estopped to deny the agency, as against third persons who have dealt, on the faith of such representation, with the person so held out as agent, even if no agency existed in fact." Tiffany on Agency, p. 34. This has been called an agency by estoppel, but whether the defendant was estopped or not, the fact of the defendant's having put M. L. Fleer in general charge of his business, with the apparent right to make contracts of employment, is competent to be considered by the jury, upon the question whether an agency existed

or not.  The rule is thus stated in Reinhardt on Agency, secs. 89a to 92, especially in section 91: "The doctrine of estoppel as applying to agency may, therefore, be summarized that where a party holds out another as his agent, or has knowingly allowed such person to act for him in one or more similar transactions without objection, he will, as a general rule, be estopped to deny the agency, whether it in fact existed or not, if a third party, without knowing the real state of the matter, and acting in good faith, and as a reasonable man would act from the appearance of things as created by the supposed principal, relies upon the existence of the agency and deals with the supposed agent as such, if the transaction be within the real or apparent scope of the authority exercised." But, "It is not necessary, however, that the principal's assent or sanction be given in advance of the performance of the transaction which constitutes the subject-matter or purpose of the agency. If his assent be obtained after the transaction by a confirmation of the assumed relation, it is equally binding and efficacious. Such a confirmation of the authority of the supposed agent is called a ratification." Reinhardt on Agency, sec. 96. This assent is equivalent to prior authority. "The relation of principal and agent is created by ratification when one person adopts an act done by another person, assuming to act on his behalf, but without authority or in excess of authority, with the same force and effect as if the relation had been created by appointment." Tiffany on Agency, p. 46. There were facts and circumstances which the jury might well have found from the evidence to exist, and which would reasonably induce a careful and prudent person to suppose that M. L. Fleer was clothed with sufficient authority to make the contract of hiring; and certainly there was ample evidence to support a finding that the defendant had ratified his acts. There was a direct conflict between the plaintiff and the defendant in their testimony upon this question, but it was for the jury to pass upon the evidence and to find the truth of the matter. If defendant held his brother out as his agent and thereby induced others to act to their prejudice, upon the assumption that he had full authority to represent him, it is the same in law as if he had expressly authorized him to do

so; or if he ratified what he did, it is the same as if he had actually and expressly conferred the requisite authority. In either case, he is bound. *Bank v. Hay,* 143 N. C., 326.

This covers all the exceptions to evidence, refusal to nonsuit, refusal to instruct as requested, and to the charge as given. It is to be noted that the exceptions to the charge were taken to instructions which had already been given without exception—in other words, to the repetition of those instructions. But waiving that defect, we place our decision upon another ground. The question was really one of fact, which the jury have found against the defendant. They believed the plaintiff's version.

A careful review of the case leads us to the conclusion that the learned judge committed no error at the trial.