14381

SHEALY v. FOWLER *ET AL.*

(188 S. E., 499)

*Mr. Allen Johnstone,* for appellant,

*Messrs. Benet, Shand & McGowan* and *John F. Clarkson,* for respondents,

November 16, 1936.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

For several years prior to the year 1924, the plaintiff, H. L. Shealy, had been engaged in the business of retailing gasoline, motor oil and accessories in the town of Prosperity. In June of that year he purchased a certain lot of land on Main street with a view of establishing thereon a wholesale gasoline, kerosene and oil bulk plant for the distribution of these products. He constructed on the front portion of the lot adjoining the public square an automobile garage and offices wherein he conducted an automobile sales agency, and also built thereon a service station for the retailing of gasoline and oil.

Desiring to· develop the rear portion of the lot which joined the Southern Railway tracks, he communicated with the defendant, Standard Oil Company of New Jersey, and at least one other oil refining company, for the purpose of

ascertaining the wholesale prices of gasoline in tank car lots, delivered at Prosperity. Some time thereafter, Mr. R. C. Hurd, the field agent of the Standard Oil Company, whose duty it was to promote sales, arrived at Prosperity and interviewed Mr. Shealy with reference to the purchase of the back portion of his lot herein referred to. He told plaintiff, according to plaintiff's testimony, that his company was building a large number of wholesale bulk plants over the State of South Carolina, and he did not see any reason why he could not induce his company to buy the property, erect the bulk plant, and employ the plaintiff as its local commission agent to dispense and destribute the product. After some negotiations with Hurd, the plaintiff agreed to sell the property for $900.00, and to give the Standard Oil Company of New Jersey an option to purchase the property at this price, but as stated by him, with the promise and assurance of Mr. Hurd that he would be employed by the defendant as its sub-agent. The option was later duly executed and delivered. He testified that Hurd said with reference to this employment, "You leave that to me, I will take care of that."

The option expired on June 3, 1925, without having been exercised by the named defendant. About one month prior to June 3rd, the plaintiff wrote a letter to the defendant, Standard Oil Company, calling attention to the expiration date of the option; not receiving a reply, he telegraphed the company on August 6, 1925, stating that the option would be canceled if it were not complied with by August 8th.

The plaintiff says that, several weeks after the telegram was sent, Hurd returned to Prosperity and told him that he had induced the company to buy the property. He then testifies: "I told Mr. Hurd I preferred that he give me in writing what my commission would be, and what basis the continuance of my services would be based on." Hurd agreed to this, and, according to the testimony of the plaintiff, wrote the contract in the plaintiff's office at his typewriter. Two

copies were made and signed by the plaintiff and Mr. Hurd. He testified that Mr. Hurd told him that both copies would have to be sent to Charleston to be approved by Mr. Willis, who was district manager of the company; that later his copy was sent back to him by mail, and he placed it in the wooden file kept by him in his office. The plaintiff states that no one was in his office but Mr. Hurd and himself when the contract was typewritten, and that no person witnessed the execution of the alleged contract.

Thereafter, through an attorney in Newberry, the defendant company obtained a contract for the sale of the property from the plaintiff, and several weeks later the plaintiff executed and delivered to the defendant company a deed to the premises for the purchase price of $900.00.

The Standard Oil Company thereafter erected a bulk plant for the distribution of petroleum products on the lot, and the plaintiff, Shealy, was placed in charge of this plant in December, 1925, as the defendant company's subagent. He continued to operate it for the company until November 30, 1931, when the plant was closed.

On November 30, 1931, which is the day the plant was closed, the defendants, Fowler and Guthrie, agents and employees of the defendant company, checked the records and accounts pertaining to the business transacted between the plaintiff and the defendant company, and found everything in order. The plaintiff testified that during the time of his agency he was furnished by the defendant company with a steel filing cabinet, and was requested by it to keep all papers and records pertaining to the agency in this cabinet. He says that, after receiving the cabinet, he removed his copy of the contract from his wooden file and placed in in the steel cabinet. This steel cabinet was not kept on the bulk plant property which belonged to the defendant company, but was kept in the office of the plaintiff in his garage.

On the day the agency was closed and the accounts audited, the plaintiff was out of the State; his brother, M. C. Shealy,

who was the assistant manager, secretary and bookkeeper of the Shealy Motor Company—which was the name under which the plaintiff did business—had been notified three days before by the defendant company that they intended to discontinue the operation of the bulk plant. This information was given to him in the office of the defendant company's manager in the city of Charleston. Mr. Otway Shealy, an employee of the plaintiff, was present when the accounts were checked. Mr. M. C. Shealy had been summoned for jury duty in Newberry on the day of the closing, but was there when Fowler and Guthrie arrived to take possession. The two Shealys testified that they objected to the removal of the records which were kept in the steel filing cabinet, but neither of them made any statement to these agents that the plaintiff's contract with the defendant was in the cabinet. The defendants moved the cabinet and its contents from the office of the plaintiff and placed in in the bulk plant building of the defendant, but the testimony is undisputed that no friction or unpleasantness arose between these parties by reason of the removal of the cabinet.

This action was brought by the plaintiff against the defendants for damages for fraudulent breach of contract. At the close of all the testimony, the defendants moved for a directed verdict upon the grounds that the evidence did not disclose actionable wrong on the part of the defendants: (a) In fraudulently inducing the plaintiff to enter into the contract to operate the bulk plant; (b) in connection with the purchase of the property of the plaintiff; (c) in inducing plaintiff to open the highway station; (d) in removing the files from the plaintiff's office.

The trial Judge granted the motion, and this appeal assigns error upon several grounds.

The fundamental question to be considered is, What was the nature, scope, and consideration of the contract entered into between the plaintiff and the defendant, Standard Oil Company? The original contract was not introduced in evi-

dence, but the plaintiff was allowed to testify to its contents. He charges that the contract was in the steel cabinet, together with the other records referred to, which steel cabinet was moved from his office by the defendant company. He also bases a charge of fraud upon this removal. In testifying to its provisions, he says: "The contract was that he agreed to employ me as their commission agent on a basis of commission: 2c on gasoline and kerosene; 3c on motor oil, and 10% on package goods that were dispensed through the station, and that this employment remained in force and effect so long as I produced the volume of business available for that product in that vicinity." In another portion of his testimony he says: "It (the contract), certified in there, as long as I produced the volume of business that was available for that product in the community I served, and as long as I dealt fair with the company—that is as near as I can state the wording in the agreement."

There is no contention that he did not receive his commissions in full during his six years' service; nor is any claim made thereabout.

The plaintiff contends that this contract of employment was not revocable at the will of the employer; that, in addition to his agreement to serve the defendant company as its commission agent, he gave up his plan and purpose to engage in the wholesale distribution of gasoline and oil as an independent dealer, and agreed to sell, and did sell, to the defendant the very property which he had bought for this purpose; that he had the right to refuse to serve, but the defendant company had no right to revoke.

The general rule undoubtedly is that, where an independent consideration passes from the employee in addition to the performance of services, the duration of the contract may be optional on his part without impairing its mutuality. This rule finds its most frequent application in the case of contracts, whereby, in consideration of the release of a claim for damages, the employer promises

the employee employment, but the employee does not agree to serve. *Pennsylvania Co. v. Dolan,* 6 Ind. App., 109, 32 N. E., 802, 51 Am..St. Rep., 289; *Carnig v. Carr,* 167 Mass., 544, 46 N. E., 117, 35 L. R. A., 512, 57 Am. St. Rep., 488; *Sax v. Detroit, etc., Ry. Co.,* 125 Mich., 252 84 N. W., 314, 84 Am. St. Rep., 572.

A contract for permanent employment where the consideration is paid wholly or partly in advance, as by the relinquishment of a claim for personal injuries, or which is supported by a consideration other than the promise to render services, is not such an indefinite contract as to come within the rule. But a contract for permanent employment, so long as it is satisfactorily performed, which is not supported by any consideration other than the obligation of service to be performed on the one hand and wages to be paid on the other, is terminable at the pleasure of either party. 39 C. J., 72.

The plaintiff concedes that a contract for permanent employment, or for so long as the employee gives satisfactory service, resting on no other consideration except the agreement to serve, is revocable at the will of either party. He seeks to take this case out of the general rule by showing that he gave up certain rights and gave other consideration for his employment in addition to his agreement to serve. The cases which we have cited all involved additional consideration, such as the abandonment of claims for damages by injured employees, or the giving up of a business already in existence, in order to enter into the new employment.

The question to be determined here is, Did the Standard Oil Company secure the services of the plaintiff for valuable consideration outside of and in addition to the services to be rendered, and was the plaintiff fraudulently induced to give up his plan and right to engage in the wholesale distribution of gasoline and oil when he sold and conveyed to the defendant company the lot of land on which the bulk plant was built?

The trial Judge held that there was no showing of any fraudulent scheme or plan on the part of the defendants to inveigle the plaintiff into selling his property or to take advantage of him or to defraud him. He also concluded that no consideration entered into the contract other than the service of the plaintiff; and, being a contract of employment for an indefinite term, it could be terminated at the will of either party. The trial Judge in our opinion reached the correct conclusion.

The testimony shows that Hurd, the field agent of the defendant company in the district in which Prosperity is located, had no authority to make a contract of employment with the plaintiff. The evidence further shows that the plaintiff was clearly put on notice as to this lack of authority. He testifies himself that, when he required the terms of his employment as subagent to be reduced to writing, in consequence of which Hurd drew up the contract (all of which Hurd denies), he was told by Hurd that the two copies would have to be sent to Charleston for approval by the defendant company's district manager, Mr. Willis. He was asked on direct examination: "I ask you, whether or not when that copy was returned, did it bear evidence of the approval of the manager?" This question was never answered. Nowhere in the record does it appear that the contract, testified to in substance by the plaintiff, ever received the approval of the defendant company, or the approval of any of its officers who had authority to consummate contracts.

The plaintiff introduced in evidence the written option, the contract of sale, and his deed of conveyance to the defendant company, all of which were duly executed and witnessed. In no one of these written instruments is any consideration expressed except the sum of $900.00. There is not the remotest suggestion in the record that the defendant company, or any of its officers charged with the duty and power to make contracts, ever had any notice or knowledge that these papers did not embrace the entire transaction and

include all considerations entering therein. Nor is there any evidence that the written contract of employment testified to by the plaintiff contained the recital of any consideration except that of service as the defendant company's subagent at Prosperity. The defendant company admits this employment, which existed for six years; that is, from the opening of the bulk plant at Prosperity, in 1925, until the operation of the plant was discontinued, in 1931.

To constitute a contract, both parties must assent to the same thing in the same sense. *Trollinger v. Fleer,* 157 N. C., 81, 72 S. E., 795. Assent to an offer need not be expressed to constitute a contract; it may be inferred from acts and conduct. *Bernstein v. Bord,* 146 Va., 670, 132 S. E., 698. But there is no evidence in this case that the defendant company assented, expressly or by acts and conduct, to the contract contended for by the plaintiff. It clearly appears that the defendant company had a contract of employment with the plaintiff for an indefinite term, that the plaintiff's service was satisfactory and mutually profitable, and that he fulfilled his part of the agreement in attending to the defendant's business at Prosperity did not prevent the defendant company from terminating the contract. The contract under which the plaintiff acted as subagent was for an indefinite time, and could be terminated at the will of either party. 39 C. J., 71. Cases too numerous to cite are listed in the note as supporting this proposition of law.

The plaintiff alleges in his complaint that the defendants initiated the negotiations for the purchase of his property with the secret, unlawful, and willful purpose to defraud him and to wreck and destroy his prospect of conducting an independent wholesale distribution plant. We have examined the record with the greatest care, but have been unable to find the testimony which would substantiate this charge. The evidence is not susceptible of the inference that the defendants entered into any design or conspiracy against the plaintiff. The plaintiff himself testified

that, the defendant company having failed to exercise its right to purchase his property under the option, he became the moving party to carry through the transaction. He wrote and wired the company in his effort to make the sale.

There is no suggestion in the evidence that the sum of $900.00 paid to the plaintiff by the defendant company did not represent the full market value of the lot purchased.

When the bulk plant station was finally closed, the records checked, and the steel cabinet containing the records was moved from the plaintiff's office and placed in the bulk plant of the defendant company on the adjoining lot, the plaintiff wrote a letter to the defendant company requesting the return of all records "which contain information and protection to us as *a bonded commission agent* (italics ours), of the Standard Oil Company of New Jersey." It will be noted that in this letter, which the plaintiff says confirmed a previous telephone conversation, nothing is said with reference to the existence or the return of the written contract which he alleges in his complaint. Apparently, he was concerned only with the records which had to do with his acts as an appointed commission agent of the company, under bond.

In reply to this letter the defendant company wrote the plaintiff: "I believe you are under a misapprehension that these records are your property. However, there is no question in our mind that they are the property of the Standard Oil Company of New Jersey, being kept by you as our sub-agent. They are, of course, open to your inspection at any time that you see fit to examine them." There is no evidence that the plaintiff ever requested the privilege or right of inspecting these papers or records at any time. The undisputed evidence is that the plaintiff's books and accounts with the defendant company were found to be entirely satisfactory to the defendant company.

The evidence for the defendant shows that the bulk plant at Prosperity has never been reopened, and that it, as well

as several others in that portion of the State, was closed on account of economic conditions.

The plaintiff insists that the trial Judge erred in refusing to admit testimony tending to show that the defendant, the Standard Oil Company, through its agents, induced the plaintiff to purchase land on the relocated highway in the vicinity of Prosperity, S. C., and to erect a filling station upon the ground that the agent of the defendant who made representations in this regard was not acting within the scope of his authority; the error being that the scope of the agent's authority was a question of fact for the jury.

His Honor correctly stated that the mere suggestion, recommendation, or encouragement of a traveling agent that the purchase of a site on the new road would be an advantage "in no sense of the word could be considered as an action of the agent in the scope of his authority which would bind the Standard Oil Company, and that it was in no sense a legal obligation upon the Standard Oil Company."

We have considered all of the questions raised by the exceptions of the appellant, and have reached the conclusion that they are without merit. The exceptions are overruled, and the judgment of the lower Court is affirmed.

MR. CHIEF JUSTICE STABLER, MESSRS. JUSTICES BONHAM and BAKER and MR. ACTING ASSOCIATE JUSTICE A. L. GASTON concur.