Norman WITTE, Plaintiff,

v.

Harold M. BRASINGTON and Darlington International Raceways, Inc., Defendants.

Civ. A. No. 2898.

United States District Court
E. D. South Carolina,
Florence Division.

May 28, 1952.

James P. Mozingo, III, Darlington, S. C., for plaintiff.

Samuel Want, Darlington, S. C., for defendants.

WYCHE, Chief Judge.

The plaintiff in this case is suing to recover damages for an alleged breach of contract of employment made by the de-

fendant Brasington with him. It is claimed by the plaintiff that this contract was adopted by the defendant corporation and that therefore the liability in this case, if any, extends to the defendant corporation as well as to the defendant Brasington. Counsel have assumed in their arguments upon the matter before me that the two defendants may be treated as in the same position.

The enterprise in connection with which the contract of employment was made is an automobile race track located near the City of Darlington, South Carolina. The project was started by the defendant Brasington. While the construction of the project was in progress and before any major phase thereof had been completed, the following contract of employment was made by the defendant Brasington with the plaintiff: "December 16, 1949 This agreement by and between Harold Brasington, party of the first part and Norman Witte, party of the second part. It is agreed by both of the above parties as follows:—that Norman Witte, party of the second part agrees to assume the directional and public relations management for an enterprise known as the International Raceways and Tri-County Fair and Exposition, located in Darlington, South Carolina, county on the following financial basis: after purses, taxes, sanctioning and officiating fees are deducted from the total gross gate receipts then Norman Witte, party of the second part is to realize for his services the following fees: 10% of net receipts with $1,000 minimum guarantee.

"It is further agreed that Harold Brasington, party of the first part will complete all work in connection with the full and complete construction of the International Raceway and Tri-County Fair and Exposition to have resulted into a raceable course as shown on blueprints, defray the cost of exploitation and advertising and otherwise have fully prepared a site where races and fair and other exhibitors can be successfully staged and conducted without any financial costs of Norman Witte, party of the second part, other than his time, efforts and good will.

"It is further agreed that after all costs of erection and construction is satisfied and paid then Norman Witte, party of the second part is to receive compensation as follows: 20% of net gate receipts after above described regular and usual expense are deducted.

"(Signed) H. M. Brasington
party of the first part
"(Signed) Norman Witte
party of the second part."

At the instance of counsel for the parties, I held a pre-trial conference on March 20, 1952. The purpose of this conference was to obtain a ruling of the Court on the legal question, whether the contract in question was one terminable by the defendants at will.

In the original complaint the plaintiff claims damages in the amount of $200,-000. In this complaint he describes the cause of action as one for breach of a contract of employment of "a permanent nature". In an amended complaint duly served and filed, no stated amount of damages is claimed. The prayer for relief is that the Court adjudicate the validity and binding effect of the contract in question, the rights and obligations of the parties thereunder, the breach, the period of time the contract was to be in force, and whatever sums are due and owing to the plaintiff. The amended complaint describes the contract in question as one to run "for a long period of time."

The defendants answered the amended complaint, setting forth several defenses on the merits, but presenting as the main legal issue in the case the contention of the defendants that the contract of the plaintiff was a contract of employment with no stated time for termination, and that such a contract is subject to cancellation by the unilateral action of the defendants.

In presenting the above legal issue, counsel on both sides have relied not only upon the pleadings, but also upon

depositions taken and answers to interrogatories propounded by the plaintiff.

■ The rule of law applicable here is that where a contract of employment fails to specify the term of employment, the contract is terminable at the will of either the employer or the employee, but with the qualification that if the employee in addition to contracting for the performance of services, gives to the employer some independent consideration, the contract will be held to be binding upon the employer for such period as can be found from the circumstances to have been in the contemplation of the parties. The general rule has been frequently invoked and applied.

Both the rule and the exception to it were stated recently by the Supreme Court of South Carolina in the case of Orsini v. Trojan Steel Corp., 219 S.C. 272, 64 S.E.2d 878, 879, where the Court said: "The general rule is that under ordinary circumstances a contract to furnish employment permanently, or so long as the employee's services shall be properly performed, or for a similar indefinite period, is no more than an indefinite hiring, terminable at the will of either party, and is therefore unenforcible as to its duration. But this rule does not apply where the employee has given a good consideration in addition to the services rendered. 35 Am.Jur. 460; Weber v. Perry, 201 S.C. 8, 21 S.E. 2d 193, 194; or as stated in Shealy v. Fowler, supra [182 S.C. 81, 188 S.E. 499]: 'The general rule undoubtedly is that, where an independent consideration passes from the employee in addition to the performance of services, the duration of the contract may be optional on his part without impairing its mutuality. This rule finds its most frequent application in the case of contracts, whereby, in consideration of the release of a claim for damages, the employer promises the employee employment, but the employee does not agree to serve.'"

The special incidents of the contract upon which the defendant in that case unsuccessfully relied to take the case out of the general rule were stated by the Court as follows: "The independent consideration relied upon by respondent to take the instant case out of the general rule and place it within that of the exception is that, as stated in his brief, he gave up a satisfactory position in Atlanta with a responsible company (nowhere is it contended that this position was of a permanent nature); that it became necessary that he move his family from Atlanta to Columbia; that his wife who was working in Atlanta also relinquished her position; that respondent gave up his home in Atlanta and his family gave up their school, church, friends and social affiliations."

The question is also dealt with in the case of Shealy v. Fowler, 182 S.C. 81, 188 S.E. 499. In that case the plaintiff complained of the fact that after being employed on a commission basis to sell petroleum products he was discharged without any reasonable cause and under circumstances which he described as fraudulent. He alleged that his employment was to remain in force as long as he produced the required volume of business. His contention was that the contract was not revocable at the will of the employer because in addition to his agreement to accept the employment, he gave up his plan and purpose to engage in the same business as an independent dealer, and that he accordingly sold certain property which he had bought for that purpose. The Court held the contract terminable at the will of the employer, stating the rule substantially as above set forth, and holding that the employment in this case was terminable at the pleasure of either party.

To the same effect, see Weber v. Perry, 201 S.C. 8, 21 S.E.2d 193; Marshall v. Charleston & W. C. R. Co., 164 S.C. 283, 162 S.E. 348.

The rules above stated are the same as are applied by the federal courts. See, Willcox & Gibbs Co. v. Ewing, 141 U.S. 627, 12 S.Ct. 94, 35 L.Ed. 882; Warden v. Hinds, 4 Cir., 163 F. 201.

In the case of Willcox & Gibbs Co. v. Ewing, supra, 141 U.S. at page 635, 12

S.Ct. at page 97, the Court said: "If Ewing had the privilege, upon reasonable notice, of severing the connection between him and the company after 1875, upon what ground could a like privilege be denied the company if it desired to dispense with his services? He contends that his life, or the continuance of the company in business, was the shortest duration of the contract, consistently with its provisions, provided he did his duty. This position is untenable. His appointment was made and accepted subject to the conditions expressed in the agreement. No one of those conditions is to the effect that so long as he devoted his time, attention, and abilities to the company's business he should retain his position as its exclusive vendor, within the territory named, without regard to its wishes. If the parties intended that their relations should be of that character, it was easy to have so stipulated.".

In the Orsini case above cited, the contract provided, as here, for a percentage basis of compensation. This element is incorporated into a text statement of the general rule as contained in 56 C.J.S., Master and Servant, § 31, pp. 412–414, as follows: "In the absence of a statute to the contrary, an employment for an indefinite term may be terminated at the will of either party regardless of the length of service, for or without cause, and without giving any reason or explanation therefor * * * unless such termination is limited by contract. This rule is followed notwithstanding the contract of employment provides for * * payment based on a per cent of the profits of the business in which the services are being rendered, or for transfer to the employee of specified property or an interest therein if profits in a certain amount are realized. * * * "

■ Counsel for the plaintiff recognize the existence of the general rule above set forth and seek to escape its application to this case by the contention that the contract is ambiguous to the extent of its failure to set forth a definite termination provision, thus opening the door, they contend, to the introduction of parol testimony on the subject. I find no ambiguity in the terms of the contract as far as the matter of termination goes. The failure of the contract to contain a termination provision automatically invokes the rule above set forth.

■ It is next contended that in the depositions and answers to interrogatories it is shown that the property on which the project was constructed is subject to a mortgage providing for installment payments over a period of ten years and that at least to the extent of this ten year period, the contract was not terminable by unilateral action on the part of the defendants. There is no merit in this contention. There is no relation between the mortgage and the term for which the contract was to run.

It will, of course, be understood that I am not dealing with the question whether, on the merits, the plaintiff is entitled to compensation for services which he claims to have rendered before his discharge, or with the measure of such compensation except as the same may be stated in the contract upon which the suit is brought and in the holding herein made as to the termination of such contract.

■ The application of the rule above stated to the facts stated in the pleadings and depositions and answers to interrogatories of course carries with it a denial of the right of the plaintiff to damages on the grounds (as stated in paragraph 6 of his amended complaint) that he was "forced to back down on commitments made by him to others in the field of racing and automobile service, and to discontinue negotiations with all parties concerning the defendants' raceway, * * * ". The quoted allegations state nothing more than the normal consequences of the termination of the contract of employment, and this also applies to the allegation in paragraph 6 of the amended complaint to the effect that plaintiff suffered damage to his reputation in the racing field.

The above views are stated in response to the joint request of counsel for the

respective parties as a guide in the further prosecution and defense of this cause. No jury trial has been demanded. If it is intended that this cause shall be treated as one in equity, and if it is contemplated that an application will be made for the appointment of a Special Master, the same should be made at an early date.

It is so ordered.