**JACK'S COOKIE COMPANY, Appellant and Cross-Appellee,**

v.

**A. A. BROOKS, Appellee and Cross-Appellant.**

**No. 7060.**

United States Court of Appeals Fourth Circuit.

Argued Oct. 18, 1955.

Decided Dec. 8, 1955.

See also D.C., 122 F.Supp. 113.

W. Pinkney Herbert, Jr., Charlotte, N. C., R. B. Herbert, Jr., Columbia, S. C., and James O. Moore, Charlotte, N. C. (Herbert & Dial, Columbia, S. C., and Lassiter, Moore & Van Allen, Charlotte, N. C., on the brief), for Jack's Cookie Co.

Fred F. Cunningham and Edward M. Woodward, Columbia, S. C. (Edens & Woodward and Cunningham & Brandon, Columbia, S. C., on the brief), for A. A. Brooks.

Before SOPER and DOBIE, Circuit Judges, and BRYAN, District Judge.

SOPER, Circuit Judge.

This suit grows out of the termination of an agency contract between Jack's Cookie Company, a North Carolina corporation, and A. A. Brooks, a citizen of South Carolina who was engaged in the

business of selling and distributing the products of divers manufacturers in South Carolina and neighboring states. Jack's terminated the contract after it had been in operation for about nineteen months and notified the trade by circular letter that Brooks was no longer its sales representative. Thereupon Brooks sued Jack's claiming damages for breach of contract and unjust enrichment, and also claiming actual and punitive damages for libel on the ground that certain statements in the circular letter imputed to him a lack of business capacity and insinuated that he had been discharged for dishonesty or misconduct. At the conclusion of the plaintiff's case the District Judge, on motion of the defendant, dismissed the claims of breach of contract and unjust enrichment on the grounds that the arrangement between the parties lacked mutuality and was indefinite in duration and terminable at the will of either party.

The case proceeded on the claim of libel and was submitted to the jury at the close of all the evidence on the issue of actual damages, the right to punitive damages being refused. The jury found for the plaintiff on this cause of action in the sum of $17,500, and both parties have appealed.

Jack's had been in the business of manufacturing cookies in Charlotte, North Carolina, since 1947, but had not been very successful and in consequence it was reorganized in 1950 and a new management was installed under a new president, John Barton, who set about changing the methods of operation. The company had previously distributed its product in its own trucks on certain routes in and around Charlotte, and Barton decided to sell to independent distributors rather than from his own trucks in introducing the product in new territory. Brooks had had experience as a manufacturer's representative in handling diversified lines of goods which he sold to wholesalers and distributors. He was on the lookout for new accounts and one of his circulars fell into Barton's hands and led to a meeting between the men and the formation of an oral contract.

It was agreed that Brooks was to set up a sales organization for the sale of Jack's product by wholesale distributors in Virginia and West Virginia, and also in the Carolinas, with the exception of certain cities in the latter states. He agreed to produce a reasonable amount of business and to pay his own expenses and he was to receive as compensation a commission of five per cent on gross sales after a deduction of five per cent for freight charges. He was to have the position so long as he did a good job, but he was free to stop work for Jack's at any time. There is no dispute that these terms formed part of the contract, but as to another element the testimony was in conflict. On behalf of Jack's it was testified that Brooks was not to take on any additional lines of merchandise; but Brooks denied that he made any such agreement.

Entering upon his duties on or about January 1, 1952, Brooks visited jobbers to whom he was already selling other merchandise and divided the territory amongst them giving them exclusive areas for the sale of Jack's cookies upon their agreement that they would not handle competing goods. He had one salesman working for him at the time, but employed additional men to assist him in the work, and paid them four-fifths of his commissions. His efforts were successful and sales were greatly increased in the territory assigned him, so that by September, 1953 the gross sales had risen from approximately $1500 to approximately $50,000 per month, and his net return amounted to $1,000 per month for a number of months in 1953. Upon his advice Jack's increased the minimum purchase by the distributors from $50 to $200, and he selected new distributors in certain localities in place of old ones appointed by Jack's who had proved unsatisfactory. In April, 1953, after he found the line profitable, he asked for a written contract which he had previously refused to sign, but the company declined.

Dissatisfaction arose in certain particulars. Brooks did not keep any record of his sales or of his employees, and he did not make it clear to them that they were his employees and not Jack's, and in some instances the salesmen called on Jack's for services which Brooks should have given. Barton was obliged to call a meeting of salesmen in Charlotte in order to instruct the salesmen on this point. Barton instructed Brooks to open an office in Columbia as headquarters for Brooks' operations and in January Brooks rented an office and engaged a secretary, but it was not opened until July and then it proved to be the headquarters of an employment agency operated by his wife and his secretary. Brooks hired and fired a large number of salesmen during the period and he had only two salesmen at work in September, 1953.

In April, 1953, in order to increase sales and instruct the retailers as to the distribution of the product, it was agreed that one Henry Hall, an experienced man, should be employed to go out with the salesmen on their routes in order to demonstrate how to display the goods, and he was paid for these services by Jack's for seventy-five days, and thereafter one-half of his salary was paid by each of the parties.

While working for Jack's Brooks took on several new lines for distribution, contrary to his agreement with Jack's, if the testimony of Barton is accepted.

On September 1, 1953 Brooks was called into Jack's office and discharged. He was paid in full for goods sold up to that date. Henry Hall, as an employee of Jack's, was put in charge of the distribution of the merchandise on a salary basis.

On or about September 3, 1953 Barton sent out to the trade a letter announcing that Brooks had ceased to be Jack's representative in the following terms:

"This is to notify you that effective September 1, 1953, Mr. A. A. Brooks and his organization are no longer the sales representatives of Jack's Cookie Company, Charlotte, N. C.

"We are sorry that situations of this nature have to arise, but we have no hesitancy in doing that which in our judgment is best for the company, its distributors, representatives and customers. You will be contacted as soon as possible by an official representative of this company. It is our sincere desire to serve you in an efficient manner with quality products of which you can be proud. Your business is greatly appreciated and we will do everything in our power to continue to be worthy of it.

"Should there be any questions whatsoever concerning this situation, please do not hesitate to call Mr. Howard Walters at 3–9033, Charlotte, N. C."

 We think it was error to submit the libel charge to the jury because the letter does not convey a defamatory meaning. At the worst it meant nothing more than that Jack's believed it better for the business to select a new sales agent, and the statement that it was best for the company, its distributors and customers to make the change, could not fairly be interpreted as charging Brooks either with incompetency or dishonesty. Any unexplained severance of the relationship of employer and employee gives rise to speculations as to the reasons for it in the minds of interested persons, but something more than mere speculation is required to form the basis of a charge of libel or slander. In Phillips v. Union Indemnity Co., 4 Cir., 28 F.2d 701, we had occasion to consider a case from South Carolina in which it was charged that the cancellation of an agency by an insurance company reflected upon the character of the agents under the circumstances in which it occurred. We sustained a demurrer to the complaint saying, at pages 702, 703:

"It is familiar law that while the office of the innuendo is to connect

the defamatory matter with the other facts set out, so as to show the meaning and application of the charge, it cannot enlarge or restrict the natural meaning of the words, or introduce new matter. It cannot be used to give a forced and unnatural construction and application of the words, but only a reasonable and natural construction and application. * * * since the injurious character of the publication and the harm done to the plaintiff depends upon the manner in which the writing is understood by those to whom it is uttered, it must be read and construed in the sense in which the reader would ordinarily understand it; and if, when thus considered, it cannot reasonably be interpreted as defamatory, it will not serve as a basis for the action.

"* * * But neither in a libel case, nor in any other, may a jury be permitted to indulge in mere speculation, unaided by facts, to determine which of several causes may have produced an event. No facts are alleged which tend to show that there was friction between the parties to the cause, or that the most evil of all possible meanings was intended by the defendant."

This is also the rule of the South Carolina courts by whose decisions we are governed in this case. See particularly, Hubbard v. Furman University, 76 S.C. 510, 57 S.E. 478, where, upon the resignation of a teacher, the school sent out a notice to its patrons in which it was said that the change was made for the good of the department and in the interest of the patrons, and the court held that the statement was not libelous and would not ordinarily be understood as implying a charge of incompetency or lack of character. See also Hospital Care Corp. v. Commercial Casualty Insurance Co., 194 S.C. 370, 9 S.E.2d 796; cf. Duncan v. Record Publishing Co., 145 S.C. 196, 143 S.E. 31.

Our conclusion is not changed by the testimony of three recipients of the letter who were allowed to testify that the impression made upon them by it was that Brooks had done something wrong or out of the way which led to the discontinuance of the agency, although it did not cause them to lose confidence in him. The decision must rest upon the ordinary meaning of the words and not upon the mere speculation of the recipients of the letter. The case is not one in which it is proper to consider the effect upon the minds of the hearers of words which were ambiguous in the context of the circumstances under which they were spoken. See Jenkins v. Southern Ry. Co., 130 S.C. 180, 125 S.E. 912.

■ We think, however, that the case should have been submitted to the jury on the issue of breach of contract, because in our opinion the evidence, taken in the light most favorable to the agent, indicated something more than a contract in which the agent is appointed merely to sell the goods of a manufacturer on commission, and there is no promise on either side to continue the relationship for a definite period. In such event each sale constitutes the acceptance of an offer in a series of independent transactions and the manufacturer fulfills his agreement by paying the stipulated commission and is ordinarily at liberty to terminate the arrangement at will without breach of contract. See Willcox & Gibbs Sewing-Machine Co. v. Ewing, 141 U.S. 627, 12 S.Ct. 94, 35 L.Ed. 882; Motor Car Supply Co. v. General Household Utilities Co., 4 Cir., 80 F.2d 167; E. I. DuPont de Nemours & Co. v. Claiborne-Reno, 8 Cir., 64 F.2d 224, 89 A.L.R. 238; Curtis Candy Co. v. Silberman, 6 Cir., 45 F.2d 451; Terre Haute Brewing Co. v. Dugan, 8 Cir., 102 F.2d 425; Shealy v. Fowler, 182 S.C. 81, 188 S.E. 499.

■ On the other hand, if the manufacturer appoints an agent not merely to sell the goods, but the agent in addition to making sales furnishes additional consideration, as when he sets up a distributive system for the manufacturer's goods and his compensation is measured by the amount of goods sold in the territory assigned to him, the manufacturer is not

at liberty to terminate the agreement at will even though it contains no provision for its termination, but must retain the agent in the employment for a reasonable period of time. Williston on Contracts, § 1027(a), p. 2852; Joy v. City of St. Louis, 138 U.S. 1, 50, 11 S.Ct. 243, 34 L.Ed. 843; Restatement of Agency, § 442 Comment C; Kelly-Springfield Tire Co. v. Bobo, 9 Cir., 4 F.2d 71; Bassick Mfg. Co. v. Riley, D.C.E.D.Pa., 9 F.2d 138; J. C. Millett Co. v. Park & Tilford Distillers Corp., D.C.N.D.Cal.S.D., 123 F. Supp. 484; Shealy v. Fowler, 182 S.C. 81, 188 S.E. 499.

There is evidence in this case which tends to show that Brooks' employment falls into the latter category, and hence the question should have been submitted to the determination of the jury; and if they should so find, they should go further and determine the additional question whether the agent was permitted to retain the agency for a reasonable time, and if not, to ascertain the damages, if any, which he suffered thereby.

However, the jury should be instructed first to consider whether Brooks kept the promises which he made. This issue involves in the first place a determination of the disputed question whether Brooks promised, when he assumed the agency, not to take on any new lines additional to Jack's, and if they find that he made this promise, and violated it, they should be instructed to find a verdict for the defendant.

In addition the jury should determine whether Brooks faithfully and efficiently carried out his part of the business. In this connection the jury should be instructed to consider the evidence tending to show the character of the salesmen selected by him, the frequent changes of personnel, his failure to render them the necessary services and to instruct them that they were his employees and not the employees of Jack's; and also the failure of Brooks to set up a headquarters' office for his agency. If the jury should find from a consideration of this evidence relating to these matters that Jack's had reasonable ground to terminate the agency, the verdict of the jury should be in its favor.[1]

It is not our intention to express any opinion on these controverted questions or to limit the jury to the consideration of the circumstances referred to above, but rather to outline the course to be followed upon the remand of the case, leaving to the District Judge to determine the bearing of the evidence, as it will be developed at the new trial upon the crucial issues in the case.

Reversed and remanded for new trial in accordance with the views expressed in this opinion.

---

1. There is no legal basis for the separate claim of the appellee for unjust enrichment.