7465

STATE v. LEE.

1. DISCREDITING WITNESS.—Permitting the solicitor to show a witness for the State is the putative father of the defendant is not within the rule that a party cannot discredit his own witness.

2. CHARGE—MURDER.—The defendant having been convicted of manslaughter and there being evidence applicable to the charge as to manslaughter, it is not necessary to inquire if there was evidence applicable to the crime of murder.

3. SELF-DEFENSE.—The fault in bringing on a difficulty so as to deprive defendant of the plea of self-defense may include acts occurring

before the actual encounter, but so closely connected with it in time and circumstance as to be fairly regarded as operating to bring it on.

4. IBID.—The true rule is that the plea of self-defense is not available to one who uses language so opprobrious that a reasonable man would expect it to bring on a physical encounter and which did actually contribute to bringing it on.

Before DEVORE, J., Oconee, November term, 1908. Affirmed.

Indictment against E. B. Lee for murder of Miles A. Smith. From sentence, defendant appeals.

*Mr. E. S. Herndon,* for appellant, cites: *Solicitor cannot discredit his own witness:* 30 Ency., 1128; 43 S. C., 126; 22 S. C., 199; Chev. L., 37. *Instructions should be applicable to the evidence:* 11 Ency. P. & P., 158; 15 S. C., 95; 2 L. R. A.,668; 3 L. R. A., 639; 13 L. R. A., 272; 2 Black., 418; 4 L. R. A., 470; 8 L. R. A., 593; 17 L. R. A., 33; 39 L. R. A., 161; 48 L. R. A., 711; 62 L. R. A., 922; 63 L. R. A., 937; 7 L. R. A., (N. S.) 97; 18 U. S. Sup. L. Ed., 186; 33 Id., 53; 32 Id., 103. *The fault in bringing on a difficulty which deprives one of right of self-defense must be a fault at time of encounter:* 86 Am. Dec., 470; 28 L. R. A., 591; 58 Ark., 544; 33 So., 262; 28 Tex. App., 584; 30 Tex. Cr. R., 291. *Use of opprobious language does not deprive one of right of self-defense:* 89 Ga., 140; 92 Ga., 601; 191 Mo., 114; 45 L. R. A., 687; 76 Am. St. R., 736; 14 Tex. Cr. App., 502; 75 S. C., 494.

*Solicitor Proctor A. Bonham,* contra: *As to effect of opprobious words:* 75 S. C., 494.

March 3, 1910. The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES. The defendant was charged with the murder of Miles Smith, in Oconee county, on March 10, 1907, and was convicted of manslaughter and sentenced.

The first ground of appeal assigns error in permitting the solicitor, on the examination of G. S. Massey, a witness for the State, to show that he was the putative father of the defendant. It is objected that it was not competent for the State to thus discredit its own witness.

The general rule is that a party is not allowed to impeach the credibility of his own witness, either by testimony as to his general character, or by showing that he made statements inconsistent with his testimony on the trial. *Perry* v. *Massey,* 1 Bailey; *Farr* v. *Thompson,* 1 Cheves, 44; *Bauskett* v. *Keitt,* 22 S. C., 187, 189; *State* v. *Johnson,* 43 S. C., 126, 20 S. E., 988.

The testimony admitted in this case, however, does not fall within the terms or reason of the rule. It merely shows the relation between the witness and the defendant. *State* v. *Petsch,* 43 S. C., 149, 20 S. E., 993; *State* v. *Stukes,* 73 S. C., 391, 53 S. E., 643.

The next exception is to the following charge: "If two persons are hunting for each other with a deliberate, wilful and malicious purpose of inflicting serious bodily harm upon each other, or of taking the life of each other—if they start out with that purpose, each one hunting for the other, and they come in contact with each other and get in a difficulty, and that was their intention when they started out, and one is killed by the other, I charge you under those circumstances, that the party who did the killing will be guilty of murder. If two parties start out hunting for each other, with the expectation of getting into a difficulty, and they come together and get into a difficulty, not with deliberation, not with malice, aforethought, but if they get into a difficulty suddenly, upon sudden heat

and passion, one being as much at fault as the other, and one kills the other, I charge you that would be a case of manslaughter. The difference being, the law would say there was no malice in the latter illustration I have given to you, and that would reduce the killing from murder to manslaughter."

The objection to the charge is that there was no evidence tending to show that defendant was at any time seeking the deceased for the purpose of doing him any injury, and that the charge was inapplicable and prejudicial. The record shows there was some evidence to render the charge applicable as to manslaughter. The verdict being for manslaughter, which negatives malice, it is unnecessary to inquire whether there was any testimony tending to show that defendant was seeking the deceased to injure him.

The third exception assigns error in refusing to charge the defendant's seventh request as follows: "Fault in bringing on a difficulty so as to deprive one of the right of self-defense must be a fault at the time of the fatal encounter, and not a fault at some previous time." The Court refused to charge in that language.

The instruction requested was inaccurate and misleading in restricting the "fault in bringing on the difficulty" to the precise time of the fatal encounter and in excluding from consideration fault which, although not occurring at the precise time of the difficulty, but previously, may have been so closely connected with the difficulty in time and circumstances as to be fairly regarded as operating to bring it on.

The evidence tended to show that there was bad blood between the parties, that the deceased believed that defendant had reported him to the revenue officers as running a still, and with having cut a pine bush as a pointer, and deceased had expressed his belief to others in hostile and threatening language, that the defendant was greatly angered by the charge that he was a reporter, denounced it as false and threatened to kill the deceased.

There was some testimony that about two hours before the homicide defendant went to the house of the deceased and raised a fuss with him, and was prevented from shooting him by a companion, and that as he went off, threatened to come back and kill deceased before sundown, and after going off a short distance shot off his pistol twice in the direction of the deceased.

There was evidence tending to show that in consequence of this attack and threat by defendant, the deceased anticipating a conflict, and wishing his wife, who was *enceinte,* out of the way, carried her to her father's, about two miles distant, and was returning by G. H. Massey's house, armed with a shot gun loaded with buckshot, and was making inquiries and looking about to ascertain whether defendant was there and using threatening language. Near sundown defendant rode by Massey's, met Massey in the road and talked with him, and information was given by Rholetter that deceased "was down there with a double barrel shot gun and powerful mad." Massey said to the defendant: "I will go down there and you can stay here." While Massey and deceased were talking defendant rode by them, spoke to deceased, to which deceased made no response. Then Massey and deceased went towards Massey's house, and as they went on in that direction defendant and deceased began to quarrel. At Massey's request to leave defendant went off some twenty or more yards, and as he went off words were passed between defendant and deceased. Then deceased said, "I am coming to show you that I am not afraid to come back," and walked up to the defendant, having his gun with one barrel cocked, but as he got close to the defendant he let the hammer down. Defendant was standing with his pistol down in his hand by his side. One witness testified that the deceased said to the defendant: "You cut that pine bush." Defendant replied, "I didn't." Deceased said, "You are a damn lie." Defendant said, "You are another one." Then deceased

drew the gun like he was going to strike defendant, and the defendant caught hold of the muzzle of the gun with his left hand. The gun was taken from deceased by one of the witnesses. Deceased grabbed around defendant and soon the defendant cried out: "Boys, he is cutting me," and while Massey and Butt were trying to get them apart, and as they started to fall to the ground, defendant fired the fatal shot. Defendant was cut in two places on the wrist, and in the back. The witness Ivester testified in part, that something was said about cutting a pine bush, and defendant said: "I suppose you accused me of reporting," that the deceased said: "I didn't accuse you of reporting a still, but the way everything has turned out it looks damn suspicious that you did it." Defendant said: "Anybody that says I reported a still is a damn lie, and a damn son of a bitch," and that time they hugged up together, and Hamp Butt wrung the gun out of deceased's hand, and in a little while defendant hollowed: "Boys, he is cutting me," and that defendant threw his pistol around and shot deceased; that defendant had his pistol in his hand all the time.

The foregoing statement is sufficient to show the general nature of the case. It thus appears that if the Court had given the instruction in the language of the request, the jury would have been deprived of the right to consider whether the acts and threats of the defendant, a short time previous to the fatal encounter, indicated that defendant was seeking the deceased with intent to injure him if they met, and whether such acts and threats were reasonably calculated, and intended to bring about the combat.

See authorities cited in note to 45 L. R. A., 698. In the case of *Airhart* v. *State,* 76 Am. St. Rep., 739, cited for appellant, the Court recognized, as a matter of course, that we may look to defendant's preceding conduct to character- ize or lend significance to his conduct at the time of the meeting.

The fourth exception contends that the Court erred in refusing to charge the following request: "16. A person is not deprived of defensive rights because he used insulting or opprobrious language. One who insults another by opprobrious words may be bound to anticipate that the person insulted will repel the insult to the extent the law allows, but he is not bound to anticipate that the latter will go to the extent of attempting to take his life; and, if such attempt is made, upon no greater provocation than this, and the person thus assaulted kills his assailant, under a reasonable belief that it is necessary to do so in order to save his own life, it is neither murder nor manslaughter."

The request was faulty, and the Court was not bound to charge it. "The true rule is that the plea of self-defense is not available to one who uses language so opprobrious that a reasonable man would expect it to bring on a physical encounter, and which did actually contribute to bringing it on." *State* v. *Rowell,* 76 S. C., 510, 57 S. E., 478.

Viewing the charge as a whole, the law of self-defense was fully and fairly given to the jury, and there is no good reason for disturbing the verdict.

The judgment of the Circuit Court is affirmed.