# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Petitioner,

v.

Joseph Bowers, Respondent.

Appellate Case No. 2019-001776

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Beaufort County
R. Markley Dennis Jr., Circuit Court Judge

---

Opinion No. 28101
Heard December 9, 2020 – Filed June 29, 2022

---

## AFFIRMED

---

Attorney General Alan McCrory Wilson and Assistant Attorney General Mark Reynolds Farthing, both of Columbia; Solicitor Isaac McDuffie Stone III, of Bluffton, all for Petitioner.

Chief Appellate Defender Robert Michael Dudek, of Columbia, for Respondent.

---

**JUSTICE FEW:** Joseph Bowers was involved in a shootout in which multiple people fired their guns. Four people were shot, and two of them died. A jury

convicted Bowers of voluntary manslaughter, assault and battery of a high and aggravated nature (ABHAN), and possession of a firearm during the commission of a violent crime. The court of appeals reversed the convictions because the trial court should not have charged the doctrine of mutual combat to the jury. *State v. Bowers*, 428 S.C. 21, 34, 39, 832 S.E.2d 623, 630, 633 (2019). We granted the State's petition for a writ of certiorari to address a narrow point: the State's contention the erroneous jury charge did not prejudice Bowers as to the ABHAN conviction. We affirm the court of appeals.

## I.      Facts and Procedural History

The facts and circumstances of this chaotic shootout are explained in detail in the opinion of the court of appeals. 428 S.C. at 25-28, 832 S.E.2d at 625-27. In essence, at least ten people shot at each other and at innocent bystanders in the parking lot of Midnight Soul Patrol on St. Helena Island in Beaufort County in the early morning hours of June 21, 2012. Approximately 75 people were present at the club when Michael Morgan began the shootout by firing a flare gun. When the shooting ended, four people had been shot, including Richard Green. Two of them later died, including Michael Morgan.

The State charged Bowers with two counts of murder, two counts of attempted murder, and possession of a firearm during the commission of a violent crime. At trial, Bowers claimed he acted in self-defense. In an off-the-record conference, the State requested the trial court charge the jury on the doctrine of mutual combat to negate the self-defense claim. Over Bowers' objection, the trial court agreed to give the mutual combat instruction. Before giving the instruction to the jury, the trial court stated to the attorneys, "[mutual combat] only applies . . . to the murder as to Michael [Morgan] . . . ." The trial court then explained the doctrine of mutual combat to the jury and stated, "This law provides that if a defendant voluntarily participated in mutual combat . . . , the killing of a victim would not be self-defense." The trial court did not explain to the jury whether or how a finding that Bowers engaged in mutual combat with Michael Morgan would affect his claim that he acted in self-defense in shooting other victims.

During its deliberations, the jury asked a question, "Does a determination of mutual combat require a finding of culpability in each of the charges?" After an off-the-record discussion with the attorneys, the trial court stated, "I'll recharge mutual combat . . . and then tell them, as a matter of law . . . , I don't think mutual combat can apply to the indictments for attempted murder." The trial court then answered the question by repeating to the jury its original instruction on mutual combat and

stating, "There can only be one mutual combat defense in the indictments, that is the indictment with respect to Michael Morgan, because there are -- I find as a matter of law there is no evidence to support the other victims being armed at any point." The trial court continued its answer, "You would still, as to the other victims, since there's no mutual combat, you would have to consider whether or not the State has disproved self-defense . . . because mutual combat would not be there to negate [self-defense] as to those particular indictments."

The jury convicted Bowers of the lesser-included offenses of voluntary manslaughter for killing Michael Morgan and ABHAN for shooting Green.[1] The jury also convicted Bowers of possession of a firearm during the commission of a violent crime.

The court of appeals reversed, 428 S.C. at 25, 832 S.E.2d at 625, finding there was no evidence to support the trial court charging the jury on the doctrine of mutual combat, 428 S.C. at 34, 832 S.E.2d at 630.[2] The State filed a petition for a writ of certiorari. The State does not challenge the court of appeals' analysis of the evidence or its ruling that the doctrine of mutual combat is not applicable. Rather, the State challenges whether the court of appeals' ruling on that issue requires reversal of the ABHAN conviction. We hold it does.

## II. Analysis

The State makes two arguments to support its contention the erroneous jury charge did not prejudice Bowers as to the ABHAN conviction. First, the State argues the trial court's initial jury instruction explaining mutual combat "could not have had

---

[1] The State withdrew one of the murder indictments during trial, and the jury found Bowers not guilty on one of the attempted murder indictments.

[2] The court of appeals found "evidence of one or more elements of mutual combat is entirely lacking." 428 S.C. at 34, 832 S.E.2d at 630. Specifically, the court of appeals found "there was no evidence of an antecedent agreement to fight or pre-existing ill-will between [Bowers] and Michael Morgan," *id.*, and "there was no evidence that Michael Morgan had reason to believe [Bowers] was armed with a deadly weapon before the shooting started," 428 S.C. at 36, 832 S.E.2d at 631. For both findings, the court of appeals relied on *State v. Taylor*, 356 S.C. 227, 589 S.E.2d 1 (2003), in which this Court placed limitations on the application of the doctrine of mutual combat. 356 S.C. at 233-34, 589 S.E.2d at 4.

any impact on [the attempted murder] charge based on the specific evidence presented." In other words, the State argues the jury would not have thought in the first place to apply the doctrine of mutual combat—based on the trial court's initial explanation—to the attempted murder charge involving Green. Second, the State contends the trial court's answer to the jury's question "corrected" any misunderstanding the jury may have had as to whether the doctrine of mutual combat could apply to the attempted murder charge involving Green.

### A.    The Law of Prejudice

To reverse a criminal conviction on the basis of an erroneous jury instruction, we must find the error was a prejudicial error. *See State v. Stukes*, 416 S.C. 493, 498, 787 S.E.2d 480, 482 (2016) (stating "the charge must be prejudicial to the appellant to warrant a new trial" (citing *State v. Curry*, 406 S.C. 364, 373, 752 S.E.2d 263, 267 (2013))). Prejudicial error in a jury instruction is an error that contributed to the jury verdict. *State v. Burdette*, 427 S.C. 490, 496, 832 S.E.2d 575, 578 (2019). The question we address here is not whether the error was harmless beyond a reasonable doubt because of overwhelming evidence of guilt. *See State v. Simmons*, 423 S.C. 552, 566, 816 S.E.2d 566, 574 (2018) ("If a review of the entire record does not establish that the error was harmless beyond a reasonable doubt, then the conviction shall be reversed."). Rather, the question here is whether the erroneous jury charge affected the jury's deliberations on the charge involving Green and, thus, contributed to the ABHAN verdict. *See State v. Tapp*, 398 S.C. 376, 389, 728 S.E.2d 468, 475 (2012) (stating, "The key factor for determining whether a trial error constitutes reversible error is whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained" (internal quotation marks omitted) (quoting *State v. Charping*, 313 S.C. 147, 157, 437 S.E.2d 88, 94 (1993))).[3] If we have any reasonable doubt as to whether the erroneous charge contributed to the verdict, we must affirm the reversal of the conviction. *Tapp*, 398 S.C. at 389, 728 S.E.2d at 475.

To determine whether the erroneous jury charge contributed to the verdict here, we must attempt to determine how the jury understood the initial jury instruction and

[3] *See generally State v. Chavis*, 412 S.C. 101, 110 n.7, 771 S.E.2d 336, 340 n.7 (2015) (discussing "the 'contributing to the verdict' standard and the 'overwhelming evidence' standard" for determining if error is reversible); 412 S.C. at 115 n.14, 771 S.E.2d at 343 n.14 (Hearn, J., dissenting) (same, arguing the two standards are different, citing cases).

the trial court's answer to the jury's question. As the State argues in its brief, "the appropriate test involves determining what a reasonable juror would have understood the charge to mean." *See Sheppard v. State*, 357 S.C. 646, 664, 594 S.E.2d 462, 472 (2004) (stating "the test is what a reasonable juror would have understood the charge as meaning"), *overruled on other grounds by State v. Burdette*, 427 S.C. 490, 503 n.3, 832 S.E.2d 575, 583 n.3 (2019); *State v. Jackson*, 297 S.C. 523, 527, 377 S.E.2d 570, 572 (1989) (same). Specifically, we must determine whether the jury would have interpreted the trial court's instruction on mutual combat—as originally given or as "corrected" by the trial court's answer to the jury's question—to mean that Bowers' mutual combat with Michael Morgan did not foreclose his claim of self-defense as to the charge involving Green.

## B.      The Role of the Doctrine of Mutual Combat

We begin our analysis with a brief summary of the doctrine of mutual combat. Mutual combat relates primarily to the law of self-defense. *See State v. Young*, 429 S.C. 155, 157 n.1, 838 S.E.2d 516, 517 n.1 (2020) (explaining "the mutual combat doctrine is most commonly used to negate self-defense"). This Court has explained self-defense by referring to four elements. *See State v. Dickey*, 394 S.C. 491, 499, 716 S.E.2d 97, 101 (2011) (listing the four elements that must be present for self-defense); *State v. Bryant*, 336 S.C. 340, 344-45, 520 S.E.2d 319, 321-22 (1999) (same); *State v. Davis*, 282 S.C. 45, 46, 317 S.E.2d 452, 453 (1984) (same); *State v. Ross*, 75 S.C. 533, 544, 55 S.E. 977, 981 (1906) (affirming a jury charge in which the four elements were explained). The doctrine of mutual combat relates to the first element, *Taylor*, 356 S.C. at 232, 589 S.E.2d at 3, which "we have traditionally described as, 'The defendant [must be] without fault in bringing on the difficulty,'" *State v. Williams*, 427 S.C. 246, 250, 830 S.E.2d 904, 906 (2019) (quoting *Dickey*, 394 S.C. at 499, 716 S.E.2d at 101).

Under the doctrine of mutual combat, if Bowers had engaged in mutual combat with Michael Morgan before they arrived at Midnight Soul Patrol, then Bowers would be deemed to be at fault in bringing on the difficulty, even though Bowers might not have started the shootout. *See Taylor*, 356 S.C. at 232, 589 S.E.2d at 3 (explaining "if a defendant is found to have been involved in mutual combat, the 'no fault' element of self-defense cannot be established"); 356 S.C. at 234, 589 S.E.2d at 4 (explaining "mutual combat acts as a bar to self-defense because it requires mutual agreement to fight on equal terms for purposes other than protection. This is inherently inconsistent with the concept of self-defense, and directly conflicts with the 'no fault' finding necessary to establish self-defense"); 356 S.C. at 234, 589 S.E.2d at 5 (requiring "pre-existing ill-will or dispute"); *see also State v. Graham*,

260 S.C. 449, 452, 196 S.E.2d 495, 496 (1973) (finding "the apparent willingness of each to engage in an armed encounter with the other" made the doctrine of mutual combat applicable). Thus, mutual combat is not a defense. Rather, the doctrine of mutual combat—if it applies—negates the defense of self-defense.

### C. The Applicability of the Doctrine of Mutual Combat in a Multi-Person Shootout

In *Taylor*, *Graham*, and most other cases in which this Court considered the applicability of the doctrine of mutual combat in the context of self-defense, the dispute began as a one-on-one encounter between the defendant and the eventual victim, and the "difficulty" resumed later between the same two combatants.[4] In those cases, it was not necessary for the Court to consider the extent to which a combatant bore responsibility for the death or injury of a person not involved in the original dispute.[5]

---

[4] *See, e.g.*, *Jackson v. State*, 355 S.C. 568, 572, 586 S.E.2d 562, 564 (2003) (stating the same two participants in the initial fight resumed the alleged "difficulty"); *State v. Mathis*, 174 S.C. 344, 348, 177 S.E. 318, 319 (1934) ("[T]he appellant and the deceased were on the lookout for each other; that they were armed in anticipation of a combat; that each drew his pistol and each fired upon the other."); *State v. Lee*, 85 S.C. 101, 104-06, 67 S.E. 141, 142 (1910) (finding "there was bad blood between" the defendant and the deceased, the two anticipated further conflict, and the deceased was eventually killed by the defendant); *but see State v. Porter*, 269 S.C. 618, 621-23, 239 S.E.2d 641, 642-43 (1977) (holding "the law [of] . . . mutual combat obviated a plea of self-defense" when the defendant engaged "in an exchange of gunfire in which [a third person] was severely wounded").

[5] In *Young*—outside the context of self-defense—we addressed the responsibility one combatant bears when another combatant kills an innocent bystander. We held,

> When two or more individuals engage in combat via a reckless shootout, they collectively trigger an escalating chain reaction that creates a high risk to any human life falling within the field of fire. In that type of gunfight, *all* individuals are willing to use lethal force and display a depraved indifference to human life. More importantly, an innocent bystander would not be shot but for the willingness of all combatants to turn an otherwise peaceful environment . . . into a battlefield. . . . [E]ach

In this case, at least ten people participated in the same shootout. If Bowers and Michael Morgan had a previous dispute, mutually agreed to fight at a later time, and otherwise satisfied the limitations on the doctrine of mutual combat set forth in *Taylor*, and if the resumption of their conflict played a role in starting the shootout in which Bowers shot Green, then under the same theory that led us to apply the doctrine in *Graham* and *Young*, the doctrine would make Bowers responsible for the injury to Green. In other words, even though there had been no prior difficulty between Bowers and Green, and even if Green threatened Bowers with death or serious bodily injury, Bowers' "mutual combat" with Michael Morgan would render Bowers "at fault" in bringing on the shootout in which he shot Green. Under those circumstances, the doctrine of mutual combat "negates self-defense." That is, Bowers' mutual combat with anyone would preclude Bowers from self-defense as to any victim killed or injured during the shootout, including Green.

The trial court explained precisely this in its initial jury instruction, stating, "This law provides that if a defendant voluntarily participated in mutual combat . . . , the killing of a victim would not be self-defense." The trial court gave no indication the effect of Bowers' mutual combat with Michael Morgan was limited to the charge in which Morgan was the victim. Rather, under the initial charge, if Bowers' mutual combat with Morgan led to the shootout, then Bowers was at fault in bringing on the difficulty and was not entitled to self-defense in shooting anyone during the shootout, including Green.

Turning then to the jury's question, "Does a determination of mutual combat require a finding of culpability in each of the charges?," the parties and the trial court appear to have interpreted the question as asking whether prior mutual combat with Michael Morgan precluded Bowers' self-defense claim as to Green. Assuming that is what the jury asked, the answer should have been, "Yes, a determination of mutual combat means the State has proven Bowers is at fault in bringing on the shootout, and the

combatant aids and encourages all of the other combatants—whether friend or foe—to create the lethal crossfire. We therefore find the law sanctions holding [one combatant] responsible for the actions of [another combatant] in causing the victim's death. Both men were equally culpable.

429 S.C. at 157-58, 838 S.E.2d at 517.

State has disproved one of the elements of self-defense. This determination requires a finding that Bowers is not entitled to self-defense for any of the charges."

Therefore, the trial court's answer to the jury's question was not correct under the law. First, the trial court told the jury mutual combat was a "defense," which it is not. More importantly, as we explained in *Taylor*, *Graham*, and other opinions, the law of mutual combat—when it applies—provides the defendant is at fault and, thus, not entitled to self-defense when a fight later occurs with his mutual combatant. As we explained in this opinion, when the prior dispute leads to a multi-person shootout, the participants in the prior dispute are at fault not only as to their mutual combatant, but also in bringing on the entire shootout. Our explanation follows from *Young*. *See supra* note 5. In this case, if mutual combat between Bowers and Michael Morgan led to this shootout, then Bowers was not entitled to self-defense for his use of force against anyone, including Green.

## III. Prejudice

This brings us to the State's argument that the mutual combat instruction did not prejudice Bowers as to the ABHAN conviction. Our standard for decision is "whether the erroneous charge contributed to the verdict." *Burdette*, 427 S.C. at 496, 832 S.E.2d at 578 (quoting *State v. Middleton*, 407 S.C. 312, 317, 755 S.E.2d 432, 435 (2014)). As stated in Subsection II.A, we must consider what impact the trial court's initial instruction on mutual combat and its answer to the jury's question likely had on the jury's consideration of Bowers' self-defense claim as to Green.

The trial court initially instructed the jury that if Bowers "voluntarily participated in mutual combat," he was not entitled to self-defense. While the evidence does not support the instruction, the jury apparently concluded Bowers did engage in mutual combat with someone, presumably Michael Morgan. The court said nothing about whether Bowers' mutual combat with Michael Morgan affected his self-defense claim as to other victims. As we explained, the law provides that it does. On this point, the law makes practical sense. If Bowers was "at fault" in bringing on the shootout because of his prior mutual combat with Michael Morgan, then his fault intuitively extended to Green. A jury is smart enough to figure that out. Accepting the State's invitation to "determin[e] what a reasonable juror would have understood the charge to mean," we find the initial jury charge likely led the jury to believe Bowers' mutual combat with Michael Morgan precluded his self-defense claim as to Green.

The question then becomes whether the trial court's answer to the jury's question "corrected" the error. First, as we explained, the trial court's answer was not correct. We find it difficult to accept the notion that an incorrect answer "corrects" anything. Second, the answer did not correct the error because it did not clearly inform the jury that self-defense was still available to Bowers as to the attempted murder charge involving Green. The trial court began its answer stating "there is no evidence to support [Green] being armed at any point." Under the limitations on mutual combat—which the trial court already explained to the jury—the consequence of Green not being armed is that Bowers' prior interactions with Green could not be considered mutual combat. The trial court simply followed up on this thought in the next sentence, explaining that Bowers' prior interaction with Green cannot relieve the State's burden of disproving self-defense. The trial court's answer gave no indication that Bowers' mutual combat with Michael Morgan could not be used to foreclose self-defense as to Green.

The trial court did state in its answer, "You would still, as to the other victims, since there's no mutual combat, you would have to consider whether or not the State has disproved self-defense . . . because mutual combat would not be there to negate [self-defense] as to those particular indictments." The dissent places great significance on this statement, but we think the statement may be understood in two different ways. The dissent assumes the jury understood it to mean that even if Bowers engaged in mutual combat with Michael Morgan he could still claim self-defense as to Green. We think it equally likely the jury understood the trial court to mean only that the jury could not find mutual combat based on Bowers' interactions with Green because there was no evidence Green was armed. There is nothing in this statement—or in the entire answer to the jury's question—that specifically informed the jury it could not apply Bowers' prior mutual combat with Michael Morgan to find self-defense did not apply as to Bowers' use of deadly force against Green.

As we have previously held, "When an incorrect charge is given, the court must withdraw it; '[m]erely superimposing a correct statement of law over an erroneous charge only fosters confusion and prejudice.'" *State v. Robinson*, 306 S.C. 399, 401, 412 S.E.2d 411, 413 (1991) (citations omitted). *Robinson* was not intended to impose a hard and fast rule. Rather, the purpose of *Robinson* is to ensure the jury understands that the incorrect charge is not applicable and the "superimposed" correct charge must control its decision. The point of *Robinson*—which we reaffirm today—is the trial court must inform the jury the first charge was incorrect, or the charge "fosters confusion and prejudice." 306 S.C. at 401, 412 S.E.2d at 413. It is too much to ask of a lay jury to determine on its own which of a trial court's

conflicting statements of law are correct, and which are incorrect.[6] In this case, the trial court responded to the jury's question by "superimposing" an *incorrect* statement of law over the already improper mutual combat instruction. We are concerned this did not cure, and likely exacerbated, the confusion the jury was already experiencing.

In addition, at trial, the State never once suggested to the jury it disproved self-defense as to the attempted murder charge involving Green on any basis other than the doctrine of mutual combat. The closest it came to doing so was in closing argument when the assistant solicitor rhetorically asked, "Was it a retaliatory gunshot?," and then answered her own question, "Maybe, but it was mutual combat." The State put no emphasis on disproving any element of self-defense as to Bowers shooting Green except by using the doctrine of mutual combat.

For these reasons, we find the erroneous mutual combat instruction prejudiced Bowers as to the ABHAN conviction.

## IV.     Conclusion

We affirm the court of appeals' decision to reverse the ABHAN conviction based on the erroneous jury instruction on the doctrine of mutual combat.

**AFFIRMED.**

**JAMES, J., concurs. BEATTY, C.J., concurring in result only. KITTREDGE, J., dissenting in a separate opinion in which Acting Justice Thomas E. Huff, concurs.**

---

[6] In *Robinson*, the trial court initially charged the jury incorrectly regarding mere presence. *Id.* Although the trial court correctly charged the law in the remainder of the same instruction, this Court held the error warranted reversal because the trial court "never retracted the incorrect statement." *Id.* Here, the trial court did not retract or refute its initial instruction on the doctrine of mutual combat, likely leaving members of the jury under the impression the initial charge still applied. It makes no difference that in *Robinson* the incorrect and later correct statements were made in the same charge.

**JUSTICE KITTREDGE:** I respectfully dissent. Distilled to its essence, the question before the Court is whether the jury understood that the State was required to disprove Respondent Joseph Bowers acted in self-defense with respect to the charges involving victim Richard Green.[7] The answer, unequivocally, is yes. The trial court told the jury (1) self-defense applied to the charges involving Green, and (2) the State had to disprove self-defense beyond a reasonable doubt with respect to the charges involving Green. That is the end of the analysis.

On appeal, Respondent contended it was error to charge the law of mutual combat as to *any* of the charges against him. The State conceded the error, acknowledging the inapplicability of mutual combat to any aspect of the case. As a result, the intricacies of mutual combat are no longer at issue before the Court. Focusing only on the issue on which this Court granted the petition for a writ of certiorari, I would reverse the court of appeals and reinstate the jury verdict involving Respondent's actions towards Green.

## I.

The majority's academic discussion of the law of mutual combat is irrelevant, for it is not the issue on which this Court granted the State's petition for a writ of certiorari and is not necessary to a resolution of this case. In fact, the law of this case requires us to find that mutual combat should not have been charged. *See Smith v. State*, 413 S.C. 194, 196, 775 S.E.2d 696, 697 (2015) (explaining an unappealed ruling, whether right or wrong, is the law of the case (quoting *Atl. Coast Builders & Contractors, L.L.C. v. Lewis*, 398 S.C. 323, 329, 730 S.E.2d 282, 285 (2012)). We granted a writ of certiorari to review *only* whether the court of appeals erred in reversing Respondent's ABHAN conviction involving Green based on the trial court's erroneous mutual combat instruction, when the trial court directly and subsequently instructed the jury that mutual combat did not apply to the shooting of Green. For reasons I will explain, I am confident the supplemental jury instruction corrected the error in the initial jury charge.

---

[7] Specifically, as to the charges against Respondent involving his actions toward Green, Respondent was convicted of assault and battery of a high and aggravated nature (ABHAN) and possession of a weapon during the commission of a violent crime. I will refer to these charges collectively as either the charges involving Green or, for ease of reference, merely the ABHAN charge involving Green.

## II.

With respect to the question actually before the Court, I certainly accept the State's and Respondent's agreement that it was error to charge the jury on mutual combat as it related to Respondent's murder charge involving another victim, Michael Morgan. As noted, error in charging mutual combat is the law of this case. The initial jury instruction apparently created confusion as to the availability of self-defense concerning Respondent's actions towards the other victims, including Green. After beginning its deliberations, the jury asked for clarification as to mutual combat, inquiring whether "a determination of mutual combat require[d] culpability in each of the charges."

The trial court informed counsel that it would recharge the jury and clarify that mutual combat was limited to the murder indictment concerning Morgan. The trial court did so via a supplemental instruction, explaining to the jury that "[t]here can only be one mutual combat defense in the indictments, that is the indictment with respect to Michael Morgan because . . . I find as a matter of law there is no evidence to support the other victims being armed at any point." Significantly, the trial court then instructed the jury that "as to the other victims, since there's no mutual combat, you would have to consider whether or not the State has disproved self-defense . . . because mutual combat would not be there to negate [self-defense] as to those particular indictments."

## A.

I initially note Respondent did not object to this supplemental jury charge, despite the invitation from the trial court to state "[a]ny exceptions or additions." As a result, it is unassailable that Respondent has failed to preserve any possible objection to the supplemental charge. *See* Rule 20(b), SCRCrimP ("Notwithstanding any request for legal instructions, the parties shall be given the opportunity to object to the giving or failure to give an instruction . . . out of the hearing of the jury. Any objection shall state distinctly the matter objected to and the grounds for objection. *Failure to object in accordance with this rule shall constitute a waiver of objection*." (emphasis added)); *Lowry v. State*, 376 S.C. 499, 503–04 & n.1, 657 S.E.2d 760, 762 & n.1 (2008) (noting the failure to object to a supplemental jury charge results in any objections being unpreserved for appellate review); *Pinckney v. Pettijohn Builders, Inc.*, 289 S.C. 405, 407, 346 S.E.2d 533, 534 (Ct. App. 1986) (holding that when counsel states at trial that he has no objection to a specific aspect of a jury charge, he may not argue on appeal that the

jury charge was erroneous); *cf.* Rule 220(c), SCACR ("The appellate court may affirm any ruling, order, decision or judgment upon any ground(s) appearing in the Record on Appeal.").  I therefore believe the proper result is to reverse the court of appeals' decision and reinstate the jury's guilty verdict as to the charges involving Green.

**B.**

Regardless, I would reverse the court of appeals and reinstate the convictions involving Green on the merits as well.  In my judgment, the recharging of the jury removed any error in the original instruction by making it clear that self-defense was available to all charges related "to the other victims," which included the charges involving Green.  I fully acknowledge our law recognizes that correct legal instructions overlaid or "superimposed" alongside improper instructions during the jury charge generally constitute reversible error.  In this regard, the majority relies on *State v. Robinson* to support its conclusion.  306 S.C. 399, 412 S.E.2d 411 (1991).  In *Robinson*, the trial court *in the same charge* gave correct and incorrect instructions on the law of "mere presence."  *Id.* at 401, 412 S.E.2d at 413.  This Court found the error reversible, concluding that "merely superimposing a correct statement of law over an erroneous charge only fosters confusion and prejudice." *Id.* (internal alteration marks omitted) (citation omitted).  I find *Robinson* easily distinguished from this case.

We are not confronted with a correct statement of law being combined with or "superimposed" alongside an incorrect charge in the same jury instruction.  Here, during the course of its deliberations, an astute jury presented a targeted question that went to heart of the disputed issue—did the law of mutual combat apply to all charges?  The original jury instruction was confusing and incomplete.  However, unlike in *Robinson*, the trial court removed any error and prejudice by issuing a standalone, supplemental jury instruction informing the jury of the correct law concerning the victim Green—that the law of mutual combat did not apply and, therefore, the State must disprove self-defense.  *See, e.g., United States v. Velez*, 652 F.2d 258, 262 (2d Cir. 1981) (explaining that an error in a jury charge may be cured by a subsequent, correct supplemental instruction); *Flanagan v. State*, 533 So. 2d 637, 645 (Ala. Crim. App. 1987) (same); *Morris v. Christopher*, 258 A.2d 172, 175 (Md. 1969) (same); *People v. Strong*, 683 N.Y.S.2d 275, 275 (App. Div. 1998) (same); *State v. Foss*, 134 A. 636, 637 (Vt. 1926) (same).

## C.

We are told by the majority that the "trial court's answer gave no indication that [Respondent] Bowers'[s] mutual combat with Michael Morgan could not be used to foreclose self-defense as to Green." That statement is patently contrary to the actual jury instruction.

The supplemental instruction made it clear that mutual combat only applied to the charge involving Morgan, and significantly, the State was required to disprove self-defense as to the other charges, including the ABHAN charge involving Green. The majority states that "the trial court's answer was not correct." I disagree, for the supplemental instruction was a *correct* statement of the law in response to the specific question posed by the jury—because there was no mutual combat in connection with the charges involving Green, Respondent's claim of self-defense was proper, and the State had the burden to disprove self-defense. I respectfully disagree with the majority's efforts to disavow the supplemental instruction based on its speculation—without any shred of proof—that the jury intuitively chose to ignore the supplemental instruction. *See State v. Washington*, 431 S.C. 394, 410, 848 S.E.2d 779, 788 (2020) ("[J]urors are presumed to follow the law as instructed to them." (quoting *State v. Grovenstein*, 335 S.C. 347, 353, 517 S.E.2d 216, 219 (1999))). Moreover, I reject the suggestion that members of the jury could have been under the impression the initial charge still applied. Accepting the premise that the original instruction was erroneous, I am firmly convinced the trial court's clear supplemental instruction—the State had to disprove self-defense as to the charges involving Green—refuted and removed the error in the original charge, even absent the court failing to "formally" withdraw the original instruction.[8] *Cf. Bollenbach v. United States*, 326 U.S. 607, 612 (1946) ("Particularly in a criminal trial, the judge's last word is apt to be the decisive word."); *McKnight v. State*, 378 S.C. 33, 48–49, 661 S.E.2d 354, 362 (2008) (explaining that supplemental instructions "attain[] a special significance in the minds of the jurors"); *Lowry*, 376 S.C. at 507, 657 S.E.2d at 764 ("The fact that the [erroneous] charge occurred in a supplemental instruction is also relevant. . . . [T]he improper charge . . . was the last thing the jurors heard before beginning deliberations and [] its brevity was likely received by the jurors with heightened alertness rather than the normal attentiveness which may well flag from

---

[8] In fact, the clear majority rule from other jurisdictions is exactly contrary to the majority's conclusion here, in that most jurisdictions (if not all) find that a correct supplemental instruction cures any error in an incorrect initial instruction.

time to time during the lengthy initial charge." (quoting *Arroyo v. Jones*, 685 F.2d 35 (2d Cir. 1982)) (internal quotation marks omitted) (citing *Bollenbach*, 326 U.S. at 612)).

## D.

Perhaps the most problematic aspect of the majority opinion is that it is based on a hypothetical view of the facts. Specifically, the majority finds the trial court erred because its supplemental instruction "gave no indication that *[Respondent's] mutual combat with Michael Morgan* could not be used to foreclose self-defense as to Green." (Emphasis added). Of course, the parties and the court of appeals (and I) all agree there was no evidence of mutual combat, nor did the Court grant a petition for a writ of certiorari to consider the mutual combat issue. The majority nonetheless marches forward and concludes, hypothetically-speaking, that *if* the facts had been different, *then* mutual combat would have applied to the charges involving Green, stating "*[i]f* [Respondent] and [] Morgan . . . satisfied the limitations on the doctrine of mutual combat . . . , *then* . . . the doctrine would make [Respondent] responsible for the injury to Green." (Emphasis added). As a result, the majority holds mutual combat negated (or should have negated) Respondent's claim of self-defense against Green.

Even assuming that the majority's conclusion is correct and the supplemental jury instruction incorrectly required the State to disprove self-defense, the majority reaches the wrong result because any possible error heightened the State's burden of proof, thereby inuring to Respondent's benefit. *See, e.g.*, *State v. Stukes*, 416 S.C. 493, 498, 787 S.E.2d 480, 482 (2016) (explaining an erroneous jury charge "must be *prejudicial* to the [defendant] to warrant a new trial" (emphasis added)). Specifically, if—as the majority claims—mutual combat negated Respondent's self-defense claim related to Green, then the State had only to prove Respondent's guilt, and did *not* need to disprove the elements of self-defense. The "erroneous" jury instruction placed an additional burden on the State, with the trial court informing the jury, "[S]ince there's no mutual combat, you would have to consider whether or not the State has disproved self-defense . . . ." Thus, under the majority's formulation of the "erroneous" jury instruction, the State needed to not only prove Respondent's guilt, but also disprove the elements of self-defense—a heightened burden compared to what would otherwise be required under the majority's ultimate analysis.

Accordingly, even assuming the majority is correct in every respect as to its hypothetical view of the facts and applicability of mutual combat to the charges involving Green, Respondent benefitted from any possible error and, therefore, has failed to prove prejudice. *See id.* (stating erroneous jury charges only warrant a new trial when they are prejudicial to the defendant).

## III.

There can be no serious challenge to the narrow issue currently before the Court—self-defense was a valid defense, which the State had to disprove beyond a reasonable doubt. The jury was clearly and correctly informed of that fact in the supplemental charge. Under these circumstances, I would reverse the court of appeals and reinstate the convictions involving Green.


**Acting Justice Thomas E. Huff, concurs.**